UNITED STATES, Appellant

v.

ALTON DENVER SUTTON, Private, U. S. Marine Corps, Appellee

3 USCMA 220, 11 CMR 220

No. 1718

Decided August 21, 1953

CDR Richard J. Selman, USN, for Appellant.
CDR Howard A. Patrick, USN, for Appellee.

Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was found guilty of three

violations of the Uniform Code of Military Justice. The only one of impor-

tance in this decision is the conviction of malingering, arising out of a charge of shooting himself in the hand to avoid service. Accused was originally sentenced to a bad-conduct discharge, total forfeitures, and confinement for three years. The convening authority, however, reduced the confinement to one year, and a board of review, after setting aside the findings of guilty on the malingering charge, approved only so much of the sentence as included forfeiture of $50.00 per month for four months and confinement at hard labor for four months.

The reason the board of review set aside the finding on malingering was because of a holding that a deposition which was admitted in evidence denied the accused his right to be confronted by the witnesses testifying against him. The Judge Advocate General of the Navy seeks a determination of that issue and has certified the question to us for our determination. We prefer to discuss the question by breaking it into two parts: (1) Is a deposition taken on written interrogatories admissible when objected to because the accused was not present at the taking and did not waive his right to be present? (2) Does the fact that the counsel who represented the accused on the preparation of the deposition was not the same counsel who represented him at the trial affect its admissibility?

It may clarify the issues to set out the particular procedure used in this case. The alleged offense was committed on June 30, 1951. The investigating officer recommended trial by general court-martial on July 13, 1951; but, due to hospitalization of the accused, his absence without leave and other delays, trial was not held until March 27, 1952. The court was appointed on February 26, 1952, and the membership included one defense counsel and four assistant defense counsel, all certified in accordance with Article 27(b), Uniform Code of Military Justice, 50 USC § 591. One of the appointed assistant defense counsel was First Lieutenant Gordon W. Nelson who represented the accused at the time the interrogatories were prepared. When the interrogatories were submitted to him, he indicated in writing on the form that he did not care to submit cross-interrogatories. After preparation, and on or about the 13th day of February 1952, the deposition was forwarded to the Commanding General, 1st Marine Division, in Korea as the witness was then a member of that command. The witness subscribed to the deposition on February 28, 1952, and it was then returned for use at the trial. The defense counsel who represented the accused at the preparation of the deposition was not the same defense counsel who represented him at the trial as he was relieved during the interim period between the preparation of the questions and the commencement of the trial.

The theory of defense was that the shooting was accidental. Accused stated that while policing the firing range area, he noticed one rifle in a stack with a swivel twisted around the sight. He stated he slapped the sight and the gun accidentally discharged, striking him in the palm of his right hand. The theory of the Government was that the wound was self-inflicted. To support this theory, trial counsel introduced evidence to show that the guns in question had been stacked in a rack in the usual manner with the bolts open and locked, to avoid any chance of additional discharge; that an empty cartridge case was found near the rifle rack shortly after the accused was injured; that he was seen with two unexpended .30 calibre rounds in his possession immediately prior to the shooting, although the accused stated he had thrown them away. To cinch his theory, trial counsel introduced into evidence a deposition of a soldier who had talked to the accused on the day in question. The evidence in the deposition consisted, in part, of a conversation between the witness and the accused. The following is the witness' version:

"He [the accused] said he was going to get out of the Marine Corps and I asked him how. He said he would be out before the day was gone and I said that was impossible. He said he would get out by his own means. He asked what would happen if a fellow was to shoot himself. I said 'You don't have the nerve to'.

If I remember, he said he did have the nerve to shoot himself. . . .

. . . . . .

"He was still talking about getting out of the Marine Corps and I was still asking him how. He said he had his own way. That he would use his own way.

. . . . . .

"I remember once he picked up a couple of live rounds on the firing line.

. . . . . .

"All I can say I saw was two .30 caliber rounds."

The board of review in its holding concluded the accused had been denied the right of confrontation, because he was neither present at the ▌▌▌ ■ time and place when the witness answered the question, nor did he waive his right to be present. The board relied upon our decision in United States v. Clay (No. 49), 1 USCMA 74, 1 CMR 74, decided November 27, 1951, wherein we enumerated some of the rights and privileges which were bundled together and labelled as a part of "military due process." Included within those enumerated was the right to be confronted by witnesses. In using that case for the foundation of its opinion, the board of review relied on the following excerpts:

"There are certain standards in the military accusatorial system which have been specifically set by Congress and which we must demand be observed in the trials of military offenses. Some of these are more important than others, but all are of sufficient importance to be a significant part of military law. *We conceive these rights to mold into a pattern similar to that developed in Federal civilian cases. For lack of a more descriptive phrase, we label the pattern as 'military due process' and then point up the minimum standards which are the framework for this concept and which must be met before the accused can be legally convicted.* The Uniform Code of Military Justice, supra, contemplates that he be given a fair trial and it com-

mands us to see that the proceedings in the courts below reach that standard.

". . . For our purposes, and in keeping with the principles of military justice developed over the years, we do not bottom those rights and privileges on the Constitution. We base them on the laws as enacted by Congress. *But, this does not mean that we can not give the same legal effect to the rights granted by Congress to military personnel as do civilian courts to those granted to civilians by the Constitution or by other Federal statutes.*

"As we have stated in previous opinions, we believe Congress intended, insofar as reasonably possible, *to place military justice on the same plane as civilian justice* . . . .

"A cursory inspection of the Uniform Code of Military Justice, supra, discloses that Congress granted to an accused the following rights which parallel those accorded to defendants in civilian courts: . . . *to be confronted by witnesses* testifying against him . . . ." [Emphasis supplied].

We recognize the probability that if the last sentence is considered separately and apart from the other reasoning, it would appear to support the holding of the board. However, when interpreted in the light of other statements, it appears to us to bespeak a different principle. In testing the privilege to be confronted by witnesses, the board of review went to the Federal civilian cases for the law and sought to make the military law conform. In some instances this might be an acceptable method of approach but for reasons which will be later amplified, all it would accomplish in this instance is to defeat the clearly expressed intent of Congress. We do not believe that result is required by our holding in United States v. Clay, supra. In that case we specifically stated we were building "military due process" on the laws enacted by Congress and not on the guarantees found in the Constitution. Particularly were we speaking of the Uniform Code of Military Justice as

222

the source and strength of military due process. Therefore, when we enumerated confrontation of witnesses as one of the privileges accorded an accused by Congress, we had to be considering it in the light of any limitations set out in the Code. Surely we are seeking to place military justice on the same plane as civilian justice but we are powerless to do that in those instances where Congress has set out legally, clearly, and specifically a different level.

In comparing the military criminal law with the civilian criminal law, we find that in the latter the principle has long been established that depositions may only be taken upon motion by the defendant and then only on order of the court after an appropriate showing. See Rule 15, Federal Rules of Criminal Procedure. The principle in the military criminal law is firmly fixed to the contrary. In Winthrop's Military Law and Precedents, 2d ed, 1920 Reprint, there is a footnote on the bottom of page 352 which states as follows:

"It may be noted that in the earliest provision on this subject—the original of the present Article in our law, viz., a Resolution of Congress of Nov. 16, 1779, there is no such restriction, the statute providing in general terms—'That in cases not capital in trials by court-martial, depositions may be given in evidence,' &c. 3 Jour. Cong., 392."

To show the historical development of the rule, we quote from some of the earlier legislation. In the American Articles of War of 1806, Article 74 provided as follows:

"ART. 74. On the trials of cases not capital, before courts-martial, the deposition of witnesses, not in the line or staff of the army, may be taken before some justice of the peace, and read in evidence; provided the prosecutor and person accused are present at the taking the same, or are duly notified thereof."

It is well worth noting that in this Article some consideration was given to the possibility that an accused might be present. However, subsequent articles have by implication repealed that provision.

Article 91 of the American Articles of War of 1874 provided:

"ART. 91.—The depositions of witnesses, residing beyond the limits of the State, Territory, or district in which any military court may be ordered to sit, if taken on reasonable notice to the opposite party and duly authenticated, may be read in evidence before such court in cases not capital."

In 1917 the previous Article 91 was embodied in Article of War 25. That Article made some amendments to the previous article which may be observed in the following quotation:

"ART. 25. — DEPOSITIONS — WHEN ADMISSIBLE.—A duly authenticated deposition taken upon reasonable notice to the opposite party may be read in evidence before any military court or commission in any case not capital, or in any proceeding before a court of inquiry or a military board, if such deposition be taken when the witness resides, is found, or is about to go beyond the State, Territory, or District in which the court, commission, or board is ordered to sit, or beyond the distance of one hundred miles from the place of trial or hearing, or when it appears to the satisfaction of the court, commission, board, or appointing authority that the witness, by reason of age, sickness, bodily infirmity, imprisonment, or other reasonable cause, is unable to appear and testify in person at the place of trial or hearing: Provided, That testimony by deposition may be adduced for the defense in capital cases."

The Navy rule has followed a somewhat similar pattern although the maximum sentence imposable was greatly reduced when depositions were used. The early Navy rule was that the party —prosecutor or defendant—desiring depositions, submitted to the court a list of interrogatories which should be propounded to the absent witness. Then the opposite party, after being allowed a reasonable time for this purpose, prepared and submitted a list of cross-in-

terrogatories. After being executed by the witness, the deposition was returned to The Judge Advocate, who became the legal custodian, and he retained it until introduced into evidence. When introduced by the prosecution, the maximum punishment imposable could not exceed confinement for more than one year.

With an historical background of that length and consistency, it would take a positive expression by Congress to the contrary before we would feel justified in inferring that a change in the law was intended. But Congress did not express a desire for a change. On the contrary, it re-enacted, in substance, the time honored rule. The Uniform Code of Military Justice, Article 49, 50 USC § 624, now in effect, provides as follows:

"(a) At any time after charges have been signed as provided in article 30, any party may take oral or written depositions unless an authority competent to convene a court-martial for the trial of such charges forbids it for good cause. If a deposition is to be taken before charges are referred for trial, such an authority may designate officers to represent the prosecution and the defense and may authorize such officers to take the deposition of any witness.

"(b) The party at whose instance a deposition is to be taken shall give to every other party reasonable written notice of the time and place for taking the deposition.

. . . . . . .

. "(d) A duly authenticated deposition taken upon reasonable notice to the other party, so far as otherwise admissible under the rules of evidence, may be read in evidence before any military court or commission in any case not capital. . . ."

This Article goes on to prescribe that admissibility is contingent upon the witness' residing or being located beyond the State, Territory, or District in which the court is ordered to sit, or beyond a distance of 100 miles from the place of trial. There can be no question that the deposition herein meets these requirements for admission as, at the time the deposition was taken, the witness was in Korea.

**224**

It will be noted that Article 49 provides for both oral and written depositions by either party and the Manual amplifies those particular provisions. The procedure is set forth in paragraph 117b of the Manual for Courts-Martial, United States, 1951, which provides in part as follows:

"Ordinarily, the side (prosecution or defense) desiring a deposition on written interrogatories will submit to opposing counsel a list of written interrogatories to be propounded to the absent witness. After opposing counsel has examined the interrogatories and has been allowed a reasonable time for the preparation of cross-interrogatories and objections, if any, the papers (with objections noted thereon) will be submitted to the convening authority or to the law officer (president of a special court-martial), depending on whether the court is in session. . . . Additional interrogatories may be propounded on behalf of the convening authority or the court as may be necessary to elucidate the whole subject of the testimony to be given by the witness.

"If the court desires the deposition of a witness it may direct counsel to submit appropriate interrogatories to the court. In any case, all parties in interest will be given full opportunity to submit cross-interrogatories and additional interrogatories, direct and cross, as desired. When the defense in a capital case submits interrogatories, cross-interrogatories may be submitted to the same extent as in a case not capital."

The rationale of the Navy board of review seems to be that the provisions of the Code and the Manual, if literally applied, clash with our holding in Clay, supra, and to escape this, all can be reconciled by limiting the use of depositions to those instances when the accused can be present. Even were we to assume there was some conflict, which we do not, this would not solve the problem as we cannot, by judicial legislation, rewrite an act of Congress, and were we to write such a limitation into the Code, we would do just that. It seems crystal clear that Congress had

no intention of limiting the use of a deposition to those cases where an accused could be present at the time of its taking. The Code specifically provides for written depositions and implicit in this procedure is the contemplation that an accused will not be present. Even in civilian jurisdictions the defendant seldom is present when depositions are executed. If he could be, oral examination probably would be resorted to. Congress was familiar with the difficulties encountered in trying military offenses, particularly under wartime conditions. Transporting military witnesses over long distances might interfere with their tactical use and affect their unit's efficiency. Moreover, in view of the fact there are no satisfactory methods of permitting accused persons to be free on bond or on their own recognizance, it would be impossible for an accused to be present unless he was transported at the expense of the United States Government and under appropriate guard. It is reasonable to conclude that because of these inherent difficulties Congress permitted the taking of a deposition by the prosecution, if notice thereof was given to the accused, his counsel, or an officer designated to represent him in the taking of the deposition.

This particular case offers a good reason why Congress could not have intended to require the presence of the accused at the taking of the depositions. The trial was held at Camp Pendleton, California, and the witness was in the combat area in Korea. If it were necessary for the accused to be present, it would have required that either he be transported to Korea or the witness returned to the United States. Undoubtedly it would have been more economical to have returned the witness to the States but his services to a combat unit would have been lost for a substantial period of time. To adopt that procedure might elevate the role of a witness to one of being a commercial tourist. Not only does the rule announced by the board of review make prosecution in this case impracticable, it would have the same effect in much of the litigation handled by courts-martial. Presently a great many of the offenses are committed in Korea or other far away places and military personnel are always on the move. Individuals are being transported to and from the combat areas and rotation is being carried on. Within the combat zone, the shifting of troops makes the tenure of a soldier in any given area short and questionable. Courts-martial are not stationary as they move with the troops and civilian witnesses residing in foreign countries are soon lost. It would be next to impossible to retain witnesses within the general area of the court without doing a grave injustice to them or to the military criminal system.

An entirely different picture is presented in civilian practice. The situs of courts and domiciles of individuals are for the most part fixed and the witnesses ordinarily live in close proximity to the scene of the crime. The case can usually be set for trial at a time convenient to the witnesses and transportation to bring them to the place of trial is available. The Government is not faced with insurmountable handicaps or interference with the war effort by transporting them to the place of trial. A rule should be founded in reason and if the reason fails, the rule falls. Here the reason which supports the civilian rule fails when applied to the military. We, therefore, do not believe it should be made the basis to defeat the expressed will of Congress.

Professor Wigmore in discussing the problem in the civilian sphere states the main objective embodied within the right of confrontation is to secure to the accused the right of cross-examination, and the secondary or subordinate objective is to permit the triers of fact to observe the demeanor and assess the credibility of a witness. In discussing these objectives he states:

"The question then, whether there is a right to be confronted with opposing witnesses is essentially a question whether there is a right to cross-examine. If there has been a Cross-examination, there has been a Confrontation. The satisfaction of the right of Cross-examination . . . disposes of any objection based on the so-called right of Confrontation.

"Nevertheless, the secondary advantage, incidentally obtained from the tribunal by the witness' presence before it—the demeanor-evidence—is an advantage to be insisted upon wherever it can be had. No one has doubted that it is highly desirable, if only it is available. But it is merely desirable. Where it cannot be obtained, the requirement ceases. It is no essential part of the notion of confrontation . . . ." [Wigmore, Evidence, 3d ed., § 1396].

As to the contention that the use of depositions is prohibited because of constitutional proscriptions, Wigmore continues:

"There never was at common law any recognized right to an indispensable thing called Confrontation *as distinguished from Cross-examination.* There *was* a right to cross-examination as indispensable, and that right was involved in and secured by confrontation; it was the same right under different names. This much is clear enough from the history of the Hearsay rule (ante, § 1364), and from the continuous understanding and exposition of the idea of confrontation (ante, § 1395). It follows that, if the accused has had the benefit of cross-examination, he has had the very privilege secured to him by the Constitution." [Wigmore, Evidence, 3d ed., § 1397].

In the instant case the accused was accorded the right of cross-examination as a legally trained lawyer who had been appointed to represent him was served with a copy of the interrogatories and had an opportunity to propose cross-questions. While it may be preferable, we do not find ▇▇▇▇▇ ■ it essential that the same person represent the accused at the preparation of the depositions as represents him at the trial. However, it is necessary when the deposition is to be used in a general court-martial that he be represented at the former by legally trained counsel. This accused was accorded that right and the right of cross-examination but he was denied the secondary advantage. This is a penalty which Congress has said he

**226**

must pay because of the limitations inherent in the military system. The right of an accused in all instances to be confronted by witnesses and the right of the Government to take depositions by written interrogatories are inconsistent. What may be desirable must give way to the absolute necessities of the services. Congress has given both parties the right to obtain evidence by the taking of depositions and has excluded their admission into evidence only in cases involving capital offenses. We can do no less than follow its dictates.

Defense counsel further contends that the mandatory provisions of Article 49 of the Code and paragraph ▇▇▇▇▇ ■ 117, Manual for Courts-Martial, United States, 1951, were not complied with. He bases this contention on the fact that the counsel who represented the accused at the trial was not present at the time the depositions were prepared. We do not believe the change in representation violated the spirit or the language of the Code. As previously stated, the counsel who represented the accused in the preparation of the deposition was legally qualified within the meaning of Article 27 (b) of the Code, supra, and could have represented him at the trial. He was only one of four assistant defense counsel who had been previously appointed to represent persons to be tried before the particular general court-martial. Between the time of the preparation of the depositions and the time of trial, he was relieved as a member of the court and we must assume this was occasioned by a transfer from the command or for some other valid reason. Here again we run into the necessities of the service. Members of the legal profession must be moved and so the personnel of a court is changing constantly. There is no contention that bad faith or an ulterior purpose brought about this change. Nor is there any assertion that counsel who tried the case was not of the same caliber as the counsel who handled the deposition. As a matter of fact, the convening authority was not ungenerous with accused. The Manual provides that it is not necessary that officers designated to

represent the parties in preparing depositions be legally qualified officers. It further provides that if the officer appointed to represent the prosecution is qualified, the officer detailed to represent the defense must have at least equivalent qualifications. The convening authority in this instance saw to it that both counsel were qualified lawyers and that their qualifications were equivalent. Having done so, he complied with the Manual provisions and the change in counsel does not render the depositions subject to attack.

The question certified by The Judge Advocate General of the Navy is answered in the affirmative and the decision of the board of review is reversed.

BROSMAN, Judge (concurring):

While in a few instances the principal opinion uses somewhat broader language than I would have selected, I concur generally in its terms, and warmly approve the result it reaches. Specifically, I agree with Judge Latimer that there was no error in the use of the deposition in this case.

II

The Chief Judge has assumed the power to hold an act of Congress unconstitutional—at least in part. I say he has "assumed" this power, because he has not undertaken to demonstrate that we possess it. Perhaps he believes the existence of such authority in the judges of this Court to be so evident as to dispense with exposition. For my part, however, I do not believe the matter to be quite so clean-cut as he. In any event, I find no necessity to determine this delicate and difficult question here and now, for I perceive no fatal infirmity in the portion of the Uniform Code of Military Justice under attack here.

III

The roots of my opinion are found in the decision of the Supreme Court of the United States cited—and thereafter ignored—by the dissenting judge. I have reference to Mattox v. United States, 156 US 237, 243–244, 39 L ed 409, 15 S Ct 337, where it was said that:

"We are bound to interpret the constitution in the light of the law as it existed at the time it was adopted, not as reaching out for new guaranties of the rights of the citizen, but as securing to every individual such as he already possessed as a British subject,—such as his ancestors had inherited and defended since the days of Magna Charta. Many of its provisions in the nature of a bill of rights are subject to exceptions, recognized long before the adoption of the constitution, and not interfering at all with its spirit. Such exceptions were obviously intended to be respected. A technical adherence to the letter of a constitutional provision may occasionally be carried further than is necessary to the just protection of the accused, and further than the safety of the public will warrant. For instance, there could be nothing more directly contrary to the letter of the provision in question than the admission of dying declarations. They are rarely made in the presence of the accused; they are made without any opportunity for examination or cross-examination, nor is the witness brought face to face with the jury; yet from time immemorial they have been treated as competent testimony, and no one would have the hardihood at this day to question their admissibility. They are admitted, not in conformity with any general rule regarding the admission of testimony, but as an *exception* to such rules, simply from the *necessities of the case*, and to prevent a manifest failure to justice. . . ." [Emphasis supplied].

I need no clearer direction than this that an exception to the principle of confrontation may be compelled by necessity. I am sure that the other two members of this Court are as unwilling as Judge Quinn to "disregard a constitutional [or, for that matter, any other] safeguard for reasons of *expediency*." (Emphasis supplied). This is not to say, however, that we are not entirely willing in concededly critical areas, to weigh—thoughtfully and with a full sense of judicial responsibility—certain protections surrounding the individual against the practical demands of law ad-

**227**

ministration in the military scene. In doing this we are supported both by ancient usage and the very highest authority. Indeed, the fabric of the common law is shot through with examples of this very process. That the safeguard with which we are concerned is enshrined in the Federal Constitution seems to have little to do with the case. Certainly any phrasing accorded it, there must be the subject of interpretation. Moreover, the concept of confrontation was a tenet of the common law long before it became a constitutional principle. It has often yielded to the balanced claims of necessity in its earlier garb, and it should in a proper case—and has—in its later one as well.

It seems to me that the dissenter is viewing the present problem with an eye single to one pan of the scales. Rather, I would urge a binocular approach here, as I have done in a number of other situations which have come before this Court. I find it genuinely difficult to understand why he will allow no place whatever to the claims of necessity, however pressing and however respectable. Judge Latimer has adequately pointed out the obvious and crucial needs which dictate the use of the sort of deposition met here. Their reiteration by me would be superfluous.

QUINN, Chief Judge (dissenting):

I dissent.

I have absolutely no doubt in my mind that accused persons in the military service of the Nation are entitled to the rights and privileges secured to all under the Constitution of the United States, unless excluded directly or by necessary implication, by the provisions of the Constitution itself. Burns v. Lovett, 202 F2d 335 (CA DC Cir) (1952), affd sub nom Burns v. Wilson, 346 US 137 (1953). On that basis, I cannot agree with the majority opinion which lightly deprives the accused in this case of a basic constitutional privilege.

The Fifth and Sixth Amendments to the Constitution protect certain fundamental rights and privileges of persons accused of crime. With only a single express exception, there is no withholding of the protection of these rights and privileges from an accused because he is, at the time, serving with the armed forces of his country. Under the express exception, set out in the Fifth Amendment, an accused in the armed forces may be held to answer for a capital, or otherwise infamous crime, without presentment or indictment of a grand jury. Constitution, Fifth Amendment. To this express exception may be added the implied limitation of the right of trial by jury, as protected by the Sixth Amendment, to the extent that a jury trial is required only where presentment or indictment is necessary. Ex parte Richard Quirin, 317 US 1, 87 L ed 3, 63 S Ct 2; Ex parte Milligan, 71 US 2, 18 L ed 281. No other recognized exceptions have been cited and I know of none. The opinions of the appellate courts in the Burns case, supra, support the conclusion that there are no other exceptions. Thus, in the majority opinion by Judge Prettyman in the Court of Appeals, it was said (pp 340–341):

"Upon elementary reasoning, upon the language and structure of the Constitution, and upon authority, we think men accused before courts-martial are entitled to due process of law. It is an elementary precept in our concept of law and government that a human being has an inherent right to due process of law. The power of the Congress to make rules for the armed forces is one of a long list (eighteen, to be exact) of powers conferred in Section 8 of Article I upon the Congress. We find no intimation in the Constitution itself that Clause 14 of Section 8 of Article I and proceedings pursuant thereto are exempt from the requirements and prohibitions of the Fifth and Sixth Amendments. We think those Amendments apply to each and all of the powers of the Congress, to the 14th Clause of Section 8 as well as to the other seventeen clauses, and to all acts of executive officials under Article II and to judicial proceedings under the power conferred by Article III, except when an exception is stated in the Constitution itself. . . . It seems to us to be clear upon the face of the test that the specific exception of cases arising in

the land or naval forces from the first clause, relating to indictment before prosecution, conclusively shows that the exception does not apply to the other clauses. As we have already pointed out, the Supreme Court has definitely indicated that the double jeopardy clause applies to courts-martial."

Mr. Chief Justice Vinson, in the Supreme Court's majority opinion, said:

"The military courts, like the state courts, have the same responsibilities as do the federal courts to protect a person from a violation of his constitutional rights. . . ."

And, in the dissenting opinion of Mr. Justice Douglas, concurred in by Mr. Justice Black, it was said:

"Of course the military tribunals are not governed by the procedure for trials prescribed in the Fifth and Sixth Amendments. That is the meaning of Ex parte Quirin, 317 US 1, 87 L ed 3, 63 S Ct 2, holding that indictment by grand jury and trial by jury are not constitutional requirements for trials before military commissions. Nor do the courts sit in review of the weight of the evidence before the military tribunal. Welchel v. McDonald, supra, p 124. But never have we held that all the rights covered by the Fifth and the Sixth Amendments were abrogated by Art. I, § 8, cl 14 of the Constitution, empowering Congress to make rules for the armed forces. I think it plain from the text of the Fifth Amendment that that position is untenable. . . ."

Among the rights and privileges protected by the Constitution, and which are not directly or indirectly inapplicable to the military, is the right of an accused "to be confronted with the witnesses against him." Constitution, Sixth Amendment. I believe that the accused here has been denied that right by the admission of a written deposition of a witness whom the accused never saw or had the opportunity to orally cross-examine.

Under the purported authority of Article 49, Uniform Code of Military Justice, 50 USC § 624, and the provisions of paragraph 117, Manual for Courts-Martial, United States, 1951, written interrogatories for a witness then outside the country were prepared by the prosecution. These were submitted to the assistant defense counsel for examination and the appending of cross-interrogatories. Defense counsel noted no objection to the prosecution questions, and as for the cross-interrogatories stated that he had "none at this time.". In due course, the witness' testimony was obtained. Neither the accused nor counsel of his choice was present at the taking of that testimony. At the trial, accused's counsel objected to the admission of the deposition on the ground that it violated accused's constitutional right. I agree with that contention.

The right to confrontation essentially involves the right of cross-examination. Wigmore, Evidence, 3d ed., § 1395, page 122. There are, of course, certain well-settled exceptions, such as the admission of a dying declaration, with respect to which there necessarily can be no cross-examination. Mattox v. United States, 156 US 237, 39 L ed 409, 15 S Ct 337. However, where cross-examination applies it "cannot be had except by the direct and personal putting of questions and obtaining immediate answers." Wigmore, Evidence, 3d ed., § 1395, page 123. Only under such conditions can the accused adequately secure the advantage of "the greatest legal engine ever invented for the discovery of truth." Wigmore, Evidence, 3d ed., § 1367, page 29.

This is made apparent by the decisions dealing with the admissibility of former testimony. In former testimony as in testimony by deposition, there is involved the problem of confrontation. It is undoubtedly on that basis that the two are uniformly considered together. Manual for Courts-Martial, United States, 1951, paragraph 145, page 269; Wigmore, Evidence, 3d ed., § 1377, page 59, § 1398, page 136, § 1400, page 140. The emphasis, in the cases on the admissibility of former testimony, is always on the fact that the accused had the witness personally before him, or his counsel had an opportunity to ques-

tion the witness directly. Mattox v. United States, supra; United States v. Eggers (No. 1990), 3 USCMA 191, 11 CMR 191, decided August 7, 1953.

To satisfy the requirements of confrontation, at some stage in the proceedings against him, an accused must have an opportunity to cross-examine a witness by direct and personal questioning in the same manner as in court. Tested by this standard, the procedure used in obtaining the deposition in this case deprived the accused of his right of confrontation. I cannot regard the right to submit written cross-questions to an unseen and unheard witness as a satisfactory legal substitute.

The majority sanctions the departure from the normal procedure for direct cross-examination because of the historical background of the practice used in this case. If Congress had approved the practice at the time of the adoption of the Constitution, I might regard it as a contemporaneous "practical construction," which I would not be at liberty to disturb. United States v. Curtiss-Wright Export Corp. 299 US 304, pages 328, 329, 81 L ed 255, 57 S Ct 216. However, the history of legislation on deposition testimony shows that it was originally thought essential that an accused be given the right to see the witness at the time of his cross-examination. Article 10, Articles of War of 1786, which was in effect just before the adoption of the first ten amendments, provided specifically for the presence of the accused at the taking of the deposition of a witness.

"ARTICLE 10. On the trials of cases not capital, before courts-martial, the depositions of witnesses, not in the line or staff of the army, may be taken before some justice of the peace, and read in evidence, provided the prosecutor and person accused are present at the taking of the same."

In the Articles of War of 1806, the necessity for a direct and personal questioning of the deposition witness was continued. None of the succeeding Articles of War directly or indirectly limit the right to have the witness appear in person for questioning by the accused or his counsel. True, the con-

struction given to the later Articles by the services resulted in the practice of limiting the accused's right of confrontation to the presentation of cross-interrogatories, when the deposition was based on written interrogatories submitted by the prosecution. Winthrop's Military Law and Precedents, 2d ed., 1920 Reprint, pages 355–357. It may be argued that this service practice received the implied approval of Congress when it enacted successive Articles of War without substantial change in the authorization for deposition testimony. But, certainly the practice was not a recognized and generally accepted modification of the right of the confrontation contemporaneous with the adoption of the Sixth Amendment. Greanleaf, Evidence, 16th ed., § 495. Accordingly, I find no support in the later development of the practice to justify the infringement of the constitutional right.

I do not read Article 49, Uniform Code of Military Justice, supra, as limiting the accused's right to cross-examination to the mere submission of written cross-questions to an absent witness. To me, it provides only, as did its predecessors, that a deposition may be taken by the Government, as well as by the accused. Such authority by itself in no way infringes upon the accused's right of confrontation. Wigmore, Evidence, 3d ed., § 1398, pages 136–140. However, giving the prosecution the right to take deposition testimony is one thing, but denying an accused a full opportunity of cross-examination is another.

Almost half of the states in the United States have provision for the taking of deposition testimony at the request of the prosecution. However, it is extremely significant that, in the absence of accused's consent, all require an opportunity for the accused or his counsel to be present at the taking thereof. See Appendix A. Where the prosecution's deposition is to be taken at a distant place, the Government must pay the reasonable expenses of the accused or his counsel incident to attendance. Mo. Rules Crim. Proc., Rule 25.13; Page's Ohio Gen. Code Anno., §§ 13444.13, 13444.14; Wisc. Stat. (1951), § 326–06. Only three states permit the prosecution to take the deposition of a

distant witness on written cross-interrogatories. But, even in those states the prosecution may use such interrogatories, and limit the accused to cross-examination by cross-interrogatories, only if that method of procedure is first used by the accused. New York Code of Crim. Proc., § 645, et seq.; People v. Werblow, 205 NYS 617, 123 Misc 204, affd 212 App Div 445, 209 NYS 588, rev'd on other grds., 241 NY 55, 148 NE 786; People v. Parkinson, 187 Misc 328, 63 NYS2d 903; see also Ind Stat Anno (Burns), § 9–1610; Maine Rev Stat (1944), chap 135, § 23; 9 Anno L Mass § 277:77. The latter practice is, of course, justifiable as a waiver by the accused of the right of confrontation. Diaz v. United States, 223 US 442, 56 L ed 500, 32 S Ct 250.

This unbroken line of legislative recognition of the requirement of personal and direct questioning of a witness, to satisfy the right of confrontation, surely lends strength to the conclusion that Congress did not intend by Article 49, Uniform Code of Military Justice, supra, to abolish the requirement for an accused in the military service. The hearings before the House Subcommittee of the Committee on Armed Services considering the Uniform Code (H.R. 2498) reinforces that conclusion. It was suggested at one of the hearings that the use of depositions be denied to the prosecution in the military so as to conform to the practice under Rule 15, Federal Rules of Criminal Procedure. The suggestion was rejected, but the comments indicate that while the prosecution was to have the right to take depositions, it was thought that the accused or his counsel would be present.

"MR. ELSTON. I think the reason we provided for depositions before in the bill last year was to give the accused a greater opportunity.

"MR. FINN. Give him the opportunity, but do not give it to the prosecution, sir.

"MR. ELSTON. I think you have to give them equal opportunity.

"MR. FINN. Well——

"MR. ELSTON. And the complaint that we had to deal with was that an accused person was often deprived of witnesses. So we wrote into the law that deposition could be taken.

"MR. FINN. Well, as I understand the present Federal program, the accused or defendant can have depositions introduced in his behalf but the prosecution cannot. This as drawn, sir, is contrary to every concept of Anglo-Saxon and American justice as to the right of the person accused to the confrontation of the witness against him.

"MR. ELSTON. Well, we have a law in the State of Ohio, for example, that permits the State to take depositions, *but means and the opportunity must be afforded to the defendant and his counsel to be present at the taking of these depositions.*

"MR. BROOKS. This is what we call depositions *be ne esse.*" [Page 696]. [Emphasis supplied].

The majority would deny the accused the full measure of his constitutional right because of the mobility of potential witnesses in the military service. However, I cannot disregard a constitutional safeguard for reasons of expediency. Certainly, it would not be imposing an undue or an uncommon burden upon the prosecution to require the presence of the accused, or counsel of his own choice, at the taking of the deposition of a witness, so that he could, by cross-examination, test the truth and accuracy of the testimony against him.

Accordingly, I dissent from the decision of the majority that a deposition obtained by the prosecution may be admitted over specific objection of defense counsel, when the accused or his counsel was not given full and complete opportunity to put his cross-questions, personally and directly, to the witness testifying against him.

APPENDIX A

Ala. Code Title 15, § 299.

Ark. Stat. Anno. Title 43, §§ 43–626.

Calif. Penal Code, Deering (1941), § 686.

Colo. Stat. Anno., Vol. II, Ch. 48, § 470, et seq.

Fla. Stat. Anno., § 902.17 (not admissible unless defendant consents).

Idaho Rules of Prac. and Proc., R. § 824.

Ind. Stat. Anno. (Burns) Title 9, § 1610 (if defendant takes deposition waiver of right to object to State taking deposition).

La. Rev. Stat. (1950) Title 15, § 158, et seq.

Maine Rev. Stat. (1944) Chap. 135, § 23 (substantially similar to Ind.).

Mass. Anno. L., Vol. 9, Chap. 276:50 (consent of defendant); see also Chap. 277:76, et seq.

Mich. Stat. Anno., § 28:1049 (if taken by defendant may be used by State).

Mo. Rules Crim. Proc., Rule 25.13.

Mont. Rev. Codes Anno., § 94–9101, et seq.

N. Y. Code of Crim. Proc., §§ 219, 645.

Ohio Gen. Code Anno. (Page), § 13444.11, et seq

So. Car. Code L. (1952), Title 16, § 73 (in rape only).

So. Dak. Code (1939), § 34.2601, et seq. (defendant only may obtain but once obtained, State may use).

Texas (Vernon's) Code Crim. Proc., Title 8, Art. 734 (substantially like So. Dak.).

Vermont Rev. Stat. (1947), § 2418 (substantially like Ind.).

Virginia Code (1950), § 18–56 (rape only).

Wash. Rev. Code, Title 10, Chap. 10.16.170, Chap. 10.52.060

Wisc. Stat. (1951) § 326.06, et seq.

Wyo. Comp. Stat. (1945) Anno., 10–1210, et seq.