UNITED STATES, Appellee

v.

VILLA DRAIN, JR., Airman Third Class, U. S. Air Force, Appellant

4 USCMA 646, 16 CMR 220

COL A. W. Tolen, USAF, and MAJ John J. Ensley, USAF, for Appellant.
LT COL Harold Anderson, USAF, and CAPT Giles J. McCarthy, USAF, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

This case is before us on petition of the accused, Drain. It has to do with the admissibility in evidence at a trial by general court-martial of a deposition, in the taking of which neither the Government nor the accused was represented by counsel certified in accordance with the Uniform Code of Military Justice, Article 27(b)(2), 50 USC § 591.

The accused was tried by a general court-martial convened at Wolters Air Force Base, Texas, and—together with one Dooley—was found guilty of assaulting an airman named Jones with intent to influence his testimony in the prospective special court-martial trial of Dooley. The appellant was sentenced to receive a bad-conduct discharge, to forfeit $50.00 of his pay per month for twelve months, and to be confined at hard labor for a like period. The convening authority remitted three months' confinement and forfeitures, but otherwise approved—and an Air Force board of review has affirmed the findings and the sentence as approved. Thereafter the accused petitioned this Court assigning as error the admission in evidence against him of a deposition taken prior to reference of the charge for trial.

II

Error is claimed by the defense to inhere in the circumstance that neither of the counsel, who represented the parties in taking the challenged deposition on oral interrogatories, had been certified by The Judge Advocate General, United States Air Force, as required by the Uniform Code. Government appellate counsel have countered by pointing to the provision—found in Article 49 of the Code, 50 USC § 624—that "If a deposition is to be taken before charges are referred for trial, such an authority [one competent to convene a court-martial for the trial of the charges] may designate officers to represent the prosecution and the defense and may authorize such officers to take the deposition of any witness." They contend that, if Congress had wished to demand that officers, certified in conformity to Article 27(b)(2) of the Code, represent the parties at the taking of a deposition, it would have been a comparatively simple matter to have set out the requirement explicitly in Article 49. Moreover, Government counsel rely on the Manual's statement that "it is not required that officers designated to represent the parties in taking oral or written depositions be legally qualified officers." Manual for Courts-Martial, United States, 1951, paragraph 117a.

Opposed to the Government's argument is the Congressional intent—unequivocally announced in Article 27 of the Code, 50 USC § 591—that an accused person shall be afforded representation during the course of a general court-martial hearing by a qualified lawyer, and that the trial counsel in such a proceeding shall be similarly qualified. To a substantial extent this Congressional purpose would be defeated were we to hold that depositions taken by counsel, not qualified and certified under Article 27(b), may properly be offered against an accused tried by general court-martial.

Due to the mobility of military personnel, key witnesses are not infrequently unavailable for call at the time of a particular trial, and their testimony must be introduced through the use of depositions. Necessarily, the character of the examination and cross-examination of these witnesses is highly important, and the professional aptitude of counsel is almost certain to reflect itself in the value of the contents of the resulting documents. Even the ablest defense counsel, for example, may well be hamstrung at the trial if there may be used against his client depositions obtained without the participation of qualified—and presumably competent—counsel.

We recognize that the broad use of depositions against a defendant in criminal cases is peculiar to military law, and that it arises justifiably from difficulties in obtaining witnesses—which difficulties are unique to law administration in the Armed Forces. At the same time, we see no need to extend the exception in a manner adverse to the interests of accused persons by holding that depositions may be taken without the provision of certified attorneys to represent both the Government and the accused. It was for this very reason that we stated in a recent case that "it is necessary when the deposition is to be used in a general court-martial that he [the accused] be represented at the former [the preparation of the deposition] by legally trained counsel." United States v. Sutton, 3 USCMA 220, 11 CMR 220.

Any sort of claimed inconsistency between Article 49 and Article 27 may be reconciled without the slightest difficulty. It is undeniable that under the former Article—as interpreted by paragraph 117a of the Manual—a deposition may be taken lawfully, without regard to whether the convening authority provides certified officers to represent the Government and the defense. Assuming that Government counsel in a setting of this sort did not surpass his defense counterpart in legal qualifications in such a manner as to transgress Article 27(c) the deposition thus secured may certainly be used at the trial of an accused person before either a special

or a summary court-martial. It is only when an effort is made to introduce in evidence at a trial by general court-martial a deposition obtained without the use of certified counsel that the policy of Article 27(b) comes into play to limit the words of Article 49.

We observe, too, that the Manual—in treating of depositions in paragraph 117a—states that "if the officer appointed to represent the prosecution is qualified in the sense of Article 27, the officer detailed to represent the defense must have at least equivalent qualifications under the provisions of that article." In our view, this language unmistakably reflects an awareness — a clear recognition, in fact—on the part of the draftsmen of this legal source that, to some extent at least, the policy overtly expressed in Article 27 must be applied to the taking of depositions. However, we are compelled to apply this policy more consistently—certainly more broadly—than the draftsmen of the Manual, under the Government's construction thereof, would seem to have done. Thus, we hold inadmissible in evidence, at a trial by general court-martial, a deposition in the preparation of which certified lawyers played no part.

### III

It has been argued before us that the failure to object to the offer of the deposition at the trial precludes any present appellate contention that it was inadmissible. This Court has, from the first, emphasized that the Manual for Courts-Martial constitutes the military lawyers' *vade mecum*—his very Bible. United States v. Hemp, 1 USCMA 280, 3 CMR 14. Since the failure to object may well have resulted solely from reliance by the defense on what Government counsel *now* contend is the plain and only meaning of the Manual phrasing in question — paragraph 117a — we are quite indisposed to penalize the accused by holding that, by his failure to object, he waived his right to urge subsequently that the deposition was inadmissible. United States v. Morris, 4 USCMA 209, 15 CMR 209.

648

## IV

Since we have found the deposition to have been inadmissible in evidence, and have held that the ac- █ cused did not waive his right to object in this Court to its use below, we turn now to a determination of the effect of the error involved. Previously we have held that the introduction of an inadmissible deposition does not demand an invocation of the doctrine of general prejudice and require a rehearing without more. United States v. Young, 2 USCMA 470, 9 CMR 100. Despite the nature of the vice which led to inadmissibility here, we see no occasion to apply a different rule.

In searching the record for specific prejudice resulting from the illegal introduction of the deposition, we cannot fail to observe that its evident purpose was to establish the presence of both accused persons—that is, the appellant here and Airman Dooley—near a certain dayroom in company with Airman Jones at the time of the alleged offense. Thus, it was calculated to corroborate the victim's story to the effect that he had been threatened and assaulted by both. However, each accused took the stand at the trial, and testified explicitly that the two of them had in fact been with Jones on the occasion alleged—but disputed that either had menaced or assaulted him. Thus, for the most part, the matter contained in the deposition was judicially admitted by both defendants—with the result that the issue, on which the deposition was intended to bear, was removed.

At one point, though, the deponent averred that, while Jones, Drain, and Dooley were standing together, from a distance of some forty feet he observed "Airman Drain moving his arms and gesturing up in the air," and that "it looked as if he were talking." Drain, on the other hand, testified that he had said nothing whatever to the prosecuting witness, although he admitted that he had been present while the former and Dooley were talking of Dooley's forthcoming trial by special court-martial. Drain added that in no sense was he gesticulating—vehemently or otherwise—and that his only possible arm movement was related to the act of drinking from a bottle containing a soft drink, which he had with him at the time.

At first blush—and in view of the conflict in the evidence concerning Drain's participation in the conversation between Dooley and Jones — it might appear that the admission of the deposition was not without a certain prejudicial effect, however slight. On the other side of the ledger, though, we find the testimony of Airman Durant, a wholly disinterested witness. According to this testimony Dooley and another airman—admitted to have been the accused, Drain—entered the facility in question at the time of the alleged offense, and were seen to "drag Airman Jones out of the dayroom . . . One [holding him] by each shoulder." Considering all of the evidence pointing in the direction of guilt, the conclusion is inescapable that in its broadest aspect the collateral information contained in the deposition was merely cumulative—so incidental that it could have had no reasonable impact on the members of the court-martial. United States v. Young, supra.

## V

Accordingly, the decision of the board of review must be affirmed.

Chief Judge QUINN and Judge LATIMER concur.