UNITED STATES, Appellee

v

JOHN W. MILLER, Sergeant, U. S. Army, Appellant

7 USCMA 23, 21 CMR 149

24

No. 7563

Decided April 27, 1956

*First Lieutenant Philip L. Evans* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel James M. Scott.*

*First Lieutenant Arnold I. Burns* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Thomas J. Newton.*

### Opinion of the Court

GEORGE W. LATIMER, Judge:

Appellant, an Army sergeant, was tried by a general court-martial under a charge of sodomy, in violation of Article 125, Uniform Code of Military Justice, 50 USC § 719. The court-martial found him not guilty of that offense, but guilty of an attempt to commit sodomy under Article 80, Uniform Code of Military Justice, 50 USC § 674. His sentence ran to dishonorable discharge, total forfeitures, and confinement for three years. The convening authority approved, and a board of review affirmed the findings and sentence. This Court granted review on the following two issues:

(1) Whether the deposition of the witness, Corporal Hicks, was taken properly under the circumstances of the case.

(2) Whether a sufficient showing was made that the witness, Hicks, was unavailable so that the said deposition was admissible in evidence.

The evidence of the Government established that on the night of February 21, 1955, the appellant and Corporal Thomas Hicks, both members of the same company stationed at Fort Dix, New Jersey, went to Wrightstown, New Jersey. After indulging in the drinking of liquor at a bar, they returned to camp. At about 2:00 a.m. on February 22, 1955, Private Baird, who was on guard duty, discovered them in the boiler room of a building on the Post, in a compromising position. He focused his flashlight on them and concluded they were engaging in an act of sodomy. They remained in the beam of light long enough for him to fix

**25**

certain identifying features in his mind. He ordered them out of the room, and announced that he was required to turn them over to military authorities. In an effort to avoid further complications, they sought to escape. Appellant was successful, but Corporal Hicks was not as fortunate, as he was caught and turned over to the military police. Appellant was subsequently taken into custody and identified by Private Baird in a lineup held the afternoon of the same day. There were three persons other than the appellant in the lineup; they were all dressed alike; and one, a sergeant, bore a close resemblance to him.

Appellant's account of the events is that he, together with an unnamed airman, traveled directly from the bar to a bus depot. Upon arrival there, the two boarded a 2:15 bus for Philadelphia some few minutes before its departure. The appellant returned from Philadelphia on a bus which departed from that city at 5:45 the same morning. As the alleged act is supposed to have taken place at approximately 2:00 a.m., he sought to establish support for his alibi by testifying that it was impossible, because of a varicose condition in his legs, for him to cover the distance from where the criminal act allegedly took place to the bus in so short a time. There is support for his contention that he traveled to Philadelphia and back, as he produced portions of bus tickets which were used for the trip to and from Philadelphia, and he was seen in that city at 5:30 a.m. by a witness who testified at trial.

The prosecution introduced into evidence the deposition of Corporal Hicks, who admitted being one of the participants in the criminal act. This is the version set forth in his deposition: Both he and appellant spent several hours drinking at Lou's Bar in Wrightstown; the latter suggested they get together and satisfy their sexual desires; the appellant stated he knew a place where they would not be disturbed; they then returned to the Post and entered the boiler room; and they were performing an act of anal sodomy when interrupted by a guard. The dep-

osition was oral, and so completely detailed in all evidentiary respects that it not only completely and definitely established the crime and the identity of the participants, but also very effectively embellished many important circumstances.

Of necessity, we must relate the circumstances surrounding the taking of the deposition, because it is the core of the two issues before us. It was taken on March 29, 1955, when someone discovered that deponent was about to be discharged from the service. Prior to that time, appellant had departed from his unit on authorized convalescent leave, and, therefore, was not present on the Post. Apparently the military authorities concluded it was not necessary to contact him personally, and so at that time it was not known by them that appellant had retained civilian counsel to represent him. Despite the absence of appellant and the fact that no personal notice of the hearing had been given him, the oral deposition was taken. From all that we can ascertain, appointed defense counsel had no opportunity to consult with the appellant prior to the hearing on the deposition. He, however, appeared without registering any objection, and without making a request for a continuance until the presence of the appellant could be assured. He participated in the hearing to the extent of cross-examining Hicks on the details of the crime. At the time of trial, objections were lodged against the admission of the deposition, but they were overruled by the law officer, and the evidence was laid before the court.

To erect the necessary foundation for the admission of the deposition into evidence, trial counsel testified that on the evening before trial, he made two fruitless telephone calls to East Orange, New Jersey, the home town of the witness prior to his entry in the Army. However, it was shown by other testimony that Cambridge, Virginia, was the place the witness stated he intended to live upon separation from the service. A copy of deponent's order directing his discharge was introduced, showing the East Orange address as the point

26

to which he was given travel pay. East Orange, New Jersey, is within 100 miles of the place where trial was held; Cambridge, Virginia, is not.

## II

Appellant contends the Manual for Courts-Martial, United States, 1951, paragraph 117*a*, outlines the requirements to be met when taking an oral deposition. It is argued that trial counsel, in preparing to take the deposition, did not comply with those essential conditions, and thereby molded together an accumulation of procedural errors which rendered the deposition inadmissible. It is further contended that, at the taking of the deposition, appellant was denied the right to consult with his counsel and to be represented by counsel of his own selection. Lastly, it is asserted that trial counsel's efforts to locate the witness were so meager, inadequate, and hopelessly insufficient, that a proper statutory base for admissibility was not established.

The Government seeks to meet defense counsel's assertions by contending that appellant waived any procedural irregularities by failing to register an objection at the time of the taking of the deposition; that the Uniform Code of Military Justice gives the accused the right to select personal counsel, but does not guarantee him that right in the taking of a deposition; that, under the circumstances of this case, i.e., Corporal Hicks' impending discharge from the service, representation by appointed counsel was justified; that the accused was given effective representation by competent counsel, as illustrated by the probing and extensive cross-examination of the witness; that the proceedings did not contravene any of appellant's rights, for it was his own absence from the Post, even though authorized, which prevented appointed counsel from consulting with him prior to the taking of the deposition; that the whereabouts of the witness at the time of trial were unknown, for it was shown that he planned to live in Virginia after discharge, and trial counsel's efforts to locate him in New Jersey were unsuccessful; and that when all facets of the controversy are considered, there was a sufficient predicate laid for the admission of the deposition.

In United States v Sutton, 3 USCMA 220, 11 CMR 220, we gave consideration to the principles governing depositions taken on written interrogatories. We there held that an accused need not be present at the taking of the deposition, but that he must be represented by legally qualified counsel. We reached that conclusion for the reason that confrontation sufficient to meet the standards of military due process can be accorded an accused through the presence of legally trained counsel conducting cross-examination. Because of the necessities peculiar to the military service, we followed the well-established rule that when a right to cross-examine a witness has been afforded an accused, there has been confrontation within the meaning of the term. United States v Drain, 4 USCMA 646, 16 CMR 220. This premise we believed found support in Professor Wigmore's discussion, which we quoted in United States v Sutton, supra, and which we now repeat:

> " 'The question then, whether there is a right to be confronted with opposing witnesses is essentially a question whether there is a right to cross-examine. If there has been a Cross-examination, there has been a Confrontation. The satisfaction of the right of Cross-examination . . . disposes of any objection based on the so-called right of Confrontation.

> " 'Nevertheless, the secondary advantage, incidentally obtained for the tribunal by the witness' presence before it—the demeanor-evidence—is an advantage to be insisted upon wherever it can be had. No one has doubted that it is highly desirable, if only it is available. But it is merely desirable. Where it cannot be obtained, the requirement ceases. It is no essential part of the notion of confrontation. . . .' [Wigmore, Evidence, 3d ed., § 1396].

"As to the contention that the use of depositions is prohibited because of con-

27

stitutional proscriptions, Wigmore continues:

> " 'There never was at common law any recognized right to an indispensable thing called Confrontation *as distinguished from Cross-examination*. There *was* a right to cross-examination as indispensable, and that right was involved in and secured by confrontation; it was the same right under different names. This much is clear enough from the history of the Hearsay rule (ante, § 1364), and from the continuous understanding and exposition of the idea of confrontation (ante, § 1395). It follows that, if the accused has had the benefit of cross-examination, he has had the very privilege secured to him by the Constitution.' [Wigmore, Evidence, 3d ed., § 1397]."

However, there is buried in the facts of this case a proposition which did not concern us in either United States v Sutton, or United States v Drain, supra, but which surfaces here for disposition. The problem presented is whether the appointed defense counsel was ever authorized to act for the accused at the taking of the deposition.

There is more to creating the relationship of attorney and client than the mere publication of an order of appointment, and we have so suggested in an earlier opinion. An accused's right to a counsel of his own choice, and the necessity of a finding that he has consented to representation by appointed counsel, was recognized by this Court in United States v Goodson, 1 USCMA 298, 3 CMR 32, where we said: "He [the accused] is entitled to select counsel of his own choice, and may object to being defended by the person appointed if he desires to do so." The relationship between an attorney and client is personal and privileged. It involves confidence, trust and cooperation. Where counsel is appointed to represent one charged with an offense, the offender is entitled to protest, if the lawyer selected is objectionable to him. In the military system, if an accused has just cause for complaint against his defender, such as hostility or incompetency, he is entitled to request the appointment of other counsel. Furthermore, he is entitled to reject the services of appointed officers and employ, at his own expense, the services of civilian counsel. It may be that where an accused does not retain the services of civilian counsel, or prevail upon individual counsel to undertake his defense, or object with good cause to the representation by counsel appointed for him, he is deemed to have concurred in the appointment. However, that notion of implied consent or acquiescence is not peculiar to the military system, but is operative in every system which relies, in whole or in part, on public defenders or court-appointed counsel.

We need not concern ourselves with that theory, however, for when it is applied to the facts in the instant case, it is at once apparent that it is not appropriate. Here we have no way of knowing whether accused was informed that he was being represented by counsel chosen by the covening authority. He could not consent if he did not know. Apparently, the military service decided he had no voice in the matter as they chose to ignore him personally. He had employed other counsel prior to the taking of the deposition, but he could not have the lawyer he had chosen appear for him at that hearing, as he had not been informed a deposition would be taken. While the military authorities may not have known that individual counsel had been employed by appellant, they certainly were aware of the fact that the deposition was being taken without notice to him. That necessarily follows, for the decision to take Hicks' testimony was made after accused had left the station on authorized leave, and trial counsel knew that neither he nor appointed defense counsel could notify the accused of the time and place of the hearing. Trial counsel sought to find the accused, and, in trying to locate him, learned the true facts of the matter. He thereupon concluded to proceed, but his choice was unfortunate. Certainly, it is beside the point to argue that the accused could not be notified because he was not pres-

28

ent at Fort Dix to receive notice. When an absence is authorized, no penalty can be assessed against an accused for accepting the tendered privilege.

We encounter some difficulty in ascertaining why, without more justification than we can find in this record, certified counsel would hold a hearing in the absence of the accused. There is no showing that defense counsel had been in communication with appellant prior to his departure from the station, and it should be apparent to any lawyer familiar with trial practice that his cross-examination would be of little value unless he knew something about his client's defense. This case offers an illustration of the accuracy of that statement. The defense offered at trial was an alibi, and, yet, that area was not explored on cross-examination. True, a number of questions were asked by defense counsel, but, for the most part, they merely paraded the sordid facts of the act before the court. That technique may be inevitable when counsel is probing in the dark, but, obviously, if the accused was not present in the boiler room, what transpired there would be of little moment to the defense. We sense from the Government's arguments a belief that necessity dictated these hasty proceedings, but that belief is without justification. It is realized that because of conditions peculiar to the military service, the Government must have the right to take depositions. But that necessity cannot be used as a cover-all to mask procedural short cuts. Neither is it an excuse for denying an accused adequate representation at ancillary stages of the prosecution. While, in this instance, the witness may have been marked for discharge from the service, there is no showing that the deposition could not have been taken earlier when the accused was on the Post, or that the witness could not have been held until the accused's return. On occasions, it appears to us that too many doubtful measures are seized upon because of a lack of prior planning. Sometimes last minute changes bring about emergencies, but, if so, they must be met by means which do not prejudice an accused. Here the management and con-trol of all individuals involved in this case rested with the Government, and it had ample means to protect itself without making the accused the victim. Apparently someone, at the last minute, decided that a deposition was necessary, but that does not create a military necessity. It is to be remembered that there was a pretrial hearing held some four days before the deposition was taken, and it could have been ascertained at that time that the taking of a deposition would be desirable. Officers charged with prosecuting must plan and prepare their presentation of cases in sufficient time to accord an accused his statutory rights.

For the foregoing reasons, we are convinced the relationship of attorney and client was not truly created and at the taking of the deposition of Corporal Hicks, the accused was not represented within the fair intent of the Code. It is, therefore, immaterial that appointed defense counsel, who purported to act for him, may have cross-examined the witness. Such examination cannot be said to have been made for and on behalf of the accused, and we refuse to accord it the status of legal confrontation. While the Government relies heavily on United States v Sutton, supra, the two cases are not on all fours. While we there held that an accused need not be present at the time written interrogatories were answered, we did not hold that the right of confrontation could be satisfied by merely sending some attorney to a hearing without the knowledge of, acceptance by, or consultation with, an accused. To bind the accused, we feel there must be some semblance of acceptance on his part, as representation by total strangers is neither desirable nor fair. Therefore, we hold the hearing was not in accordance with the spirit or letter of the Code and the deposition was not admissible.

III

For the purposes of the second issue before us, we will assume, arguendo, that the accused was represented properly at the taking of the deposition. Nonetheless, to render the deposition

admissible at trial, it was incumbent upon the Government to establish that Corporal Hicks was unavailable as a witness. There was no affirmative showing which would establish any of the statutory grounds such as illness, infirmity, military necessity or the like, and nothing more than hearsay evidence was offered to show that the witness was more than 100 miles removed from the place of trial. At best, the only ground which has any support in the record is that his whereabouts were unknown. However, when that is the base offered to support the admission, trial counsel must establish that diligent, timely, and thorough efforts were made to locate him. Mere failure to locate the witness is not sufficient.

In Inda v State, 198 Wis 557, 224 NW 733, 734 (1929), the Wisconsin Supreme Court had something to say about the subject of due diligence in attempting to locate a missing witness, and we believe the following quotation is apt:

". . . The great weight of authority is to the effect that due diligence to obtain the missing witness must affirmatively appear, in order that the evidence be admissible. And due diligence requires positive evidence of the absence of the witness from the state, or positive evidence that a thorough official search for the witness in the state has been made. Such evidence should be definite and certain so that the court may see from the facts proven that further search would have been unavailing."

Conceding that the rules governing the use of depositions in civilian and military courts differ, the Federal courts require a showing of due diligence on the part of a defendant as a condition precedent to the admission of a deposition. Thus, in Smith v United States, 106 F2d 726, 728 (CA 4th Cir) (1939), it was said:

"Testimony of this character is admitted only because the witness cannot be produced; and it should not be admitted where the presence of the witness at the trial of the cause might be had by the exercise of due diligence."

When we pause to measure the performance of trial counsel to determine the whereabouts of the witness, we find it woefully inadequate. About all we find is lack of diligence. There was no prior planning until the eve of trial, and before any action was taken by him, it was too late to exhaust the ordinary avenues of information concerning the location of the witness. No attempt was made to have any official agency in East Orange, New Jersey, make inquiry. Apparently trial counsel was quite satisfied to rely on the word of a telephone operator, and no efforts were expended to explore sources such as relatives, friends, or next of kin, who might have known of Hicks' whereabouts. The prosecution must have been aware at the time the deposition was taken that it would be necessary to lay a predicate for admitting the deposition, yet the testimony to support the foundation was not anticipated or considered until it was too late to have the witness appear. Not so much as a letter to the last known address was attempted, and, of course, that would have been a futile gesture if mailed the night before the hearing. Two inquiries made over the telephone on the day before trial strikes us as much too little and much too late. At that time, had the witness been temporarily away from his residence, he could not have been available to testify. Such meager efforts seem to suggest that some Government prosecutors assume a careless and indifferent attitude toward the taking and use of depositions. It is to be remembered that they are a substitute method for presenting facts to the detriment of the accused, and we are not willing to permit halfway measures immediately before trial to be made the basis for the use of that type of evidence. Accordingly, we conclude the showing was insufficient to render the deposition admissible, and that brings us to the question of the effect to be given to the error.

IV

The posture of the evidence in this case forces us to conclude that the

error was of such a nature as to be prejudicial. The defense ▮ relied on by the accused was that of an alibi, and he testified to facts which raised an issue as to his presence in the boiler room. The guard who testified he had a short glimpse of the accused at that time was positive in his identification. The issue was thus narrowly drawn, and the credibility of the accused became of paramount importance. Conceding the guard was a disinterested witness, as that term is used, there was left the possibility that he erred in his identification. To escape that contingency, the Government, by the use of the deposition, strengthened the chain of circumstances. Certainly, the thorough and detailed account by the participant added substantial testimony in favor of the Government. Therefore, it appears quite unrealistic for us to say that the testimony, which so definitely and surely fixed the accused as the perpetrator, would have no measurable impact on the court-martial. Truly, this is one of those instances where the Government at the trial level fights fiercely to get testimony in the record to bolster any weaknesses, and then, on appeal, comes forward and asserts that the contest was an empty gesture, as the testimony was repetitious and unnecessary to the decision. In this instance we cannot accept that hypothesis.

We have under different circumstances found that evidence improperly admitted through the medium of a deposition was not prejudicial. Such has been the case when any of the following conditions prevail: When the accused judicially admitted the commission of the crime; when there was no dispute in the testimony and the evidence of guilt was compelling; when the testimony adduced on behalf of an accused was inherently improbable or unworthy of belief; or when the testimony was merely cumulative and too unimportant to have any measurable impact on the findings of guilt. For purposes of cataloging this case, we find it approaches the category of those wherein the defense advanced is unworthy of belief. Perhaps the story told by accused almost reaches fantasy, but that results, in part, from the presence in the record of the facts and circumstances found in the deposition. Stripped of those evidentiary items, proof of the crime remains, but a finding of guilt is not compelled. It strikes us that when the record is viewed as a whole, the real dispute narrows to a question of whether the appellant left a bar, not in company with his alleged accomplice, and proceeded directly to a bus which took him to Philadelphia, or whether he accompanied the missing witness to the boiler room, participated in the act, escaped from the guard, and then boarded the bus. That was the dispute on which the deposition was intended to bear. The issue was critically present at all times, and we are sure the evidence in the deposition influenced the finding in that regard.

The decision of the board of review is reversed. The record is returned to The Judge Advocate General of the Army for action not inconsistent with this opinion. A rehearing may be ordered.

QUINN, Chief Judge (concurring in the result) :

I concur in the result. See my dissenting opinion in United States v Sutton, 3 USCMA 220, 11 CMR 220.

Judge FERGUSON did not participate in the decision in this case.