UNITED STATES, Appellee

v

RICHARD E. DONATI, Storekeeper Third Class, U. S. Navy, Appellant

14 USCMA 235, 34 CMR 15

No. 16,947

November 15, 1963

*Fred W. Shields, Esquire,* argued the cause for Appellant, Accused. With him on the brief were *Lieutenant Colonel John L. Ostby,* USMC, and *Lieutenant Colonel M. G. Truesdale,* USMC.

*Major Elvin R. Coon, Jr.,* USMC, argued the cause for Appellee, United States.

## Opinion of the Court

FERGUSON, Judge:

Arraigned and tried before a general court-martial, the accused was found guilty of breaching a lawful general regulation and nine specifications of larceny, in violation, respectively, of

236

Uniform Code of Military Justice, Articles 92 and 121, 10 USC §§ 892, 921. He was sentenced to bad-conduct discharge, forfeiture of all pay and allowances, confinement at hard labor for one year, and reduction to the lowest enlisted grade. Intermediate appellate authorities affirmed, the board of review reducing the period of confinement involved to ten months. We granted accused's petition for review upon several assignments of error, a number of which are hereinafter discussed.

## I

The accused was assigned to the U. S. S. ALTAIR, a vessel whose mission was to provide logistical support to ships of the Sixth Fleet. As a storekeeper, he had access to large quantities of cigarettes and razor blades maintained on board to supply other vessels in the fleet. Inventories conducted aboard the ALTAIR in February 1962, disclosed an unexplained shortage of 7,000 cartons of cigarettes and 2,633 packs of razor blades.

Petty Officer Huey P. Gordon, alleged to have been a co-actor with accused in the incidents giving rise to the charges, testified for the Government. According to Gordon, a postal clerk stationed at the Naval Support Activity, Barcelona, Spain, accused approached him in November 1961, and secured his agreement to a plan whereby Government cigarettes would be brought ashore from the U. S. S. ALTAIR and sold to Spanish nationals in Barcelona. The scheme envisioned repacking cases of cigarettes into smaller parcels and, through the cooperation of one Boyd, mail clerk aboard the ALTAIR, placing them in mails going ashore. Gordon would be able to distinguish these packages from ordinary parcel post, as they would bear postage due stamps. He would then remove them and deliver them to Donati's apartment in Barcelona.

Gordon further testified that the plan was placed in execution on December 14, 1961. On that date, Boyd delivered to him two mail bags containing four parcels of cigarettes. Each parcel contained twenty-five cartons. In the evening, Gordon and Donati sold the cigarettes to a Spaniard "by the name of JOE."

On December 15, a second shipment of one hundred cartons of cigarettes was similarly made. Gordon and Donati sold these to Diego, also a Spanish national. On December 16th, 17th, 18th, and 19th, similar quantities of cigarettes were received and "we would let Diego or 'JOE' have these packages." In addition, during the same period, approximately 120 pounds of razor blades were included in the "mail" which Gordon, Boyd, and Donati handled. These also were ultimately sold to Diego. The shipments continued on December 20th, 21st, and 23d, each being duly delivered to Diego in exchange for large sums of Spanish currency. In like manner, one hundred and fifty cartons were brought ashore on December 27th and sold to Diego and Joe.

Depositions of Jose and Diego Canizarez were received in evidence over defense objection. The former related that he was acquainted with Donati. Accused had sold him cigarettes on two occasions. In September 1961, he obtained two cartons of cigarettes from accused and "very close to Christmas time," Donati sold him a single carton.

Diego Canizarez likewise testified that he was acquainted with accused. In December 1962, he purchased approximately two hundred cartons of cigarettes from him. The cartons were packed "in a parcel" and delivered secretly.

Having presented the foregoing, the prosecution concluded its case, and the defense elected to offer no evidence.

## II

At the outset, we concern ourselves with the contention that the evidence is insufficient in law to support the findings of guilty. It is urged upon us that Gordon's testimony was confusing, conflicting, and indefinite and, as it came from an accomplice, cannot suffice to establish Donati's guilt. We disagree.

**237**

First, our scrutiny of the record does not demonstrate that Gordon's testimony was either confusing, ■■■■■ self-contradictory, or indefinite. Cf. United States v Bennington, 12 USCMA 565, 31 CMR 151. Rather, he related the terms of his agreement with Donati and the manner in which it was jointly executed with fair precision. Appellate counsel point out no portion of his testimony as being either "self-contradictory, uncertain, or improbable," Manual for Courts-Martial, United States, 1951, paragraph 153a, and our independent examination of the record discloses none of these faults. Hence, Gordon's testimony, coupled with the demonstration of the otherwise inexplicable shortage of cigarettes and razor blades aboard the ALTAIR, offers a sufficient predicate for the court-martial's verdict. United States v Bennington, supra; cf. United States v Schaffrath, 14 USCMA 114, 116, 33 CMR 326. The law officer appropriately instructed the court on the caution with which Gordon's testimony was to be considered, and we cannot say, as a matter of law, that it is insufficient. The assignment of error is, therefore, overruled.

III

The next issue before us concerns the action of the board of review in holding the admission of the two depositions in evidence to be erroneous, albeit not prejudicially so, in light of the other proof of accused's guilt.

From the record, it appears that on March 18, 1962, and prior to the reference of the charges, the convening authority was requested to permit the taking of oral depositions from "JOSE L. CANIZARES [sic] AND/OR OTHER APPROPRIATE SPANISH NATIONAL WITNESSES BARCELONA APPX 20 MAR." on the ground of their probable unavailability at the impending trial. Donati's appointed defense counsel was notified of the Government's request. On March 19, the convening authority authorized the taking of the depositions upon oral interrogatories.

On March 22, 1962, the deposition of Jose Canizarez was duly taken at Barcelona, Spain, in the presence of counsel for the Government, appointed counsel for the accused, and accused himself. At the outset, defense counsel objected to the use of one Carlos Via as interpreter on the ground that he, having previously acted as interpreter for the United States during the witness' interview, could not impartially translate Canizarez' testimony. On *voir dire* examination, nothing was developed to establish bias on Via's part and he declared that he was "prepared to interpret this testimony honestly and correctly."

Via was thereafter duly sworn as interpreter and served as such during the examination of the witness. Appointed counsel for Donati, however, interposed further objection to the taking of the deposition on the basis that Donati's civilian counsel was not present and moved "that the taking of the deposition be postponed until the accused's civilian attorney has an opportunity to either conduct or defend the accused at the taking of this deposition or indicate his desire not to do so." The objection was noted, but the taking of the deposition nevertheless proceeded.

On March 23, 1962, members of the prosecution and appointed counsel for Donati again met in Barcelona to take the deposition of Diego Canizarez. Again, appointed counsel interposed objections to the taking of the deposition. In addition to the absence of Donati's civilian counsel, it was pointed out that accused and appointed counsel had been notified one hour and forty-five minutes previously, while aboard ship, that they were required to present themselves in Barcelona for the taking of an unknown individual's deposition. Counsel and accused arrived in approximately one-half hour and "had approximately thirty minutes with the deponent." Believing it impossible on such short notice to plan an adequate cross-examination and to look appropriately into the witness' background, a forty-eight hour delay was requested "in order to adequately prepare for the taking of this deposition." Finally, objection was again made to the use of Via as interpreter. Again, the

taking of the deposition proceeded notwithstanding the defense objections.

Upon the two transcripts being offered in evidence at the trial, each objection was renewed by accused's civilian counsel, who pointed out that Donati had then desired individual counsel to be present, had been engaged in negotiations to retain him, but had been refused a continuance until his services could be obtained. Civilian counsel was then in the United States. The objections were overruled, and the depositions were received in evidence.

The board of review, citing our decisions in United States v Moeller, 8 USCMA 275, 24 CMR 85, and United States v Martinez, 11 USCMA 224, 29 CMR 40, held the depositions inadmissible in evidence on the basis that Via, the interpreter, had previously acted in the same case as an interpreter for the United States. It, however, as noted above, found no prejudice from their use, "in light of the testimony of other prosecution witnesses."

We are immediately met with the contention of the Government that the board erred in concluding the depositions were inadmissible on the basis it utilized. Hence, it argues, their use, not being erroneous, could not have harmed Donati's substantial rights.

The Government's initial premise is sound, for the record reflects no action on the part of Via which disqualified him to act as interpreter. On *voir dire* examination, it was revealed only that he was employed by the Navy as an interpreter and legal assistant. As such, he had previously served in the case only as interpreter for the trial counsel and investigating officers in their interviews of the witnesses to be interrogated. Under oath, he declared that his translation would be honest and accurate. He thereafter took the appropriate adjuration to perform his duties faithfully. Moreover, at no time has the quality or impartiality of his actual translation been questioned by the defense. Finally, we note both deponents spoke English and, in fact, were cross-examined in that language. Lujan v United States, 209 F2d 190 (CA10th Cir) (1953). Cf. United States v Rayas, 6 USCMA 479, 20 CMR 195.

In light of these facts, we are unable to find any basis for leveling a challenge against Via. Nor are United States v Moeller and United States v Martinez, both supra, authority for his disqualification. In the former case, we held an accuser disqualified to act thereafter as court reporter in the same case. In the latter, we reached a similar conclusion with respect to an accuser serving as interpreter. In each instance, our decision was formulated on the concept of a fair trial. United States v Moeller, supra, at page 276; United States v Martinez, supra, at page 277. There is nothing inherently unfair in employing the same interpreter for both interviewing a foreign witness and questioning him upon a deposition or at a subsequent trial. Such is a far cry from having one personally interested in an accused's prosecution serve in the capacity of reporter or interpreter, and we hold that Via's prior participation in the witness' interview did not *per se* disqualify him as interpreter.

The position which we take, however, affords scant comfort to the Government, for, accepting the invalidity of the board's reasoning, we are required to conclude the depositions were inadmissible upon the basis that Donati was denied the right to be represented by his individually chosen civilian counsel and the lack of due notice.

As to Jose's deposition, there is no contention of lack of notice except insofar as it appears that accused was denied his request for a delay in the proceedings until he could secure the attendance or advice of his individual counsel. As the same matter is involved in Diego's deposition, we consider this point as affecting both series of interrogatories.

An accused brought to trial by courtmartial is entitled to be represented "by civilian counsel if provided by him." Uniform Code of Military Justice, Article 38, 10 USC § 838; cf. United States v Tellier, 13 USCMA 323, 32 CMR 323.

The same right exists with respect to representation at the taking of a deposition. United States v Miller, 7 USCMA 23, 21 CMR 149; United States v Parrish, 21 CMR 639, 665, affirmed 7 USCMA 337, 22 CMR 127. The Code ensures free choice on the part of the accused to be represented by individual counsel, appointed counsel, or both. United States v Tellier, supra; United States v Abernathy, 1 CMR 802.

Implicit in the right to be represented by civilian counsel is the opportunity to exercise this right. Powell v Alabama, 287 US 45, 77 L ed 158, 53 S Ct 55 (1932); United States v Potter, 14 USCMA 118, 33 CMR 330; United States v Evans, 1 USCMA 541, 4 CMR 133. Whether the accused was accorded that opportunity is the controlling factor here.

Donati, through his appointed counsel, made known to the Government's representative the fact ▬▬▬■ that he was in the process of retaining civilian counsel and desired either to have him present or to obtain his advice prior to the taking of the depositions. That he was acting in good faith is shown by his later representation by such counsel at the trial and, indeed, upon this appeal. There is nothing in the record to demonstrate that he sought "only to vex the Government with needless delay in order to avoid the certain consequences of his . . . misconduct." United States v Daniels, 11 USCMA 52, 55, 28 CMR 276, 279. Rather, it appears that he was genuinely desirous of exercising his unfettered right to counsel and, as opposed to his privilege to do so, the Government relied only upon simple inconvenience to it as justification for forcing him to proceed. We are, therefore, of the opinion that the accused was improperly deprived of his right to retain and consult with counsel concerning the taking of the deposition and to be represented thereat by the attorney of his own choice. The evidence thus garnered was, by reason of such denial, inadmissible at the trial. United States v Miller, supra; United States v Potter, supra.

As to Diego's deposition, a solid ad-

ditional ground exists for finding error. A total of one hour and ▬▬▬■ forty-five minutes elapsed between notification to him aboard the ALTAIR and the time at which the interrogatories were put to the witness. The trip to Barcelona consumed approximately one-half hour. Only thirty minutes were available for interrogation of the witness after the journey into Barcelona and completion of other details. Despite prompt and repeated objection to proceeding, counsel for the Government insisted on putting the interrogatories, offering no excuse beyond the fact that "it is planned for . . . counsel to return to their respective duty stations tomorrow."

We have heretofore pointed out that depositions are tools for the prosecution which cut deeply into the privileges of an accused. United States v Valli, 7 USCMA 60, 20 CMR 186. Of particular importance is the need to afford adequate notice to the defense in order that it may properly prepare for its participation in the process. United States v Brady, 8 USCMA 456, 24 CMR 266. The deposition statute itself requires the examination to be "upon reasonable notice to the other parties." Code, supra, Article 49, 10 USC § 849. Yet, all the record shows is seventy-five minutes elapsing between the time the defense was made aware of the identity of the intended deponent and the time the proceeding was opened. Indeed, even the prior authorization to take depositions, granted upon March 19 and upon which the Government so heavily relies here, made no mention of Diego's name nor, for that matter, of any name other than that of Jose Canizarez. Cf. United States v Brady, supra, at page 460. But it is not necessary to belabor the point. Such brief notice to counsel and the accused in this case was, under the circumstances, totally insufficient. The deposition of Diego Canizarez, therefore, should have also been excluded upon this ground.

Left for determination is the question of prejudice from the ▬▬▬■ use of this testimony. The board of review found none, relying upon the other evidence of

240

guilt. We disagree and conclude that a fair risk of harm exists. United States v Miller, supra; United States v Brady, supra. Absent the depositions, proof of accused's guilt of any of the charges and specifications depends solely upon the testimony of Gordon, an admitted accomplice, which, we have said, should be considered by the fact finders with great caution. United States v Scoles, 14 USCMA 14, 33 CMR 226. The depositions serve to corroborate Gordon's testimony and establish directly that Donati sold the allegedly stolen cigarettes to Jose and Diego. The latter's testimony particularly strengthens the prosecution's case, for it relates not only the purchase of a large quantity of American cigarettes but describes their secretive delivery in parcels in a manner which leaves no doubt as to provision of a solid foundation for Gordon's relation of the criminal scheme in which the parties engaged. And, as stated by Gordon, the theft and sale of the razor blades was inextricably bound up in the same transaction. Under these circumstances, we cannot conclude that the inadmissible depositions had no measurable impact on the court-martial. As was noted in United States v Miller, supra, at page 31:

". . . Truly, this is one of those instances where the Government at the trial level fights fiercely to get testimony in the record to bolster any weaknesses, and then, on appeal, comes forward and asserts that the contest was an empty gesture, as the testimony was repetitious and unnecessary to the decision. In this instance we cannot accept that hypothesis."

Reversal is, therefore, required.

## IV

The next issue upon which we touch, in view of our reversive action, is the disqualification of the convening authority to conduct the post-trial review in this case. We pass upon this question only because of the probability of a rehearing being held in the same command.

From the record, it appears that Gordon initially refused to testify against Donati, as he had not yet been brought to trial himself upon related charges. It further appears that, as a result of his refusal, an agreement was reached with him whereby, in return for his cooperation with the Government and testimony in support of the charges, the allegations against him would be withdrawn from the general court-martial to which they had been referred and sent to a special court-martial for trial.

In a post-trial affidavit filed with this Court, the staff legal officer for the convening authority asserts that reference of the charges to the lower tribunal resulted from a pretrial agreement with Gordon whereby the latter agreed to plead guilty. The acceptance of such agreement was recommended in light of his willingness to testify against Donati, which indicated "obvious rehabilitative possibilities." The offer to plead guilty was accepted by the convening authority in light of "his willingness to testify."

We perceive no substantial difference between this reduction in the degree of punishment which Gordon █ might suffer for his part in the crimes committed with accused and those cases in which total immunity was granted to a prosecution witness. United States v White, 10 USCMA 63, 27 CMR 137; United States v Cash, 12 USCMA 708, 31 CMR 294. In either instance, the convening authority is required to pass upon the credibility of a witness whose cooperation has been obtained by his action on pending charges. It is this incompatibility with standards of impartiality which requires the review to be conducted elsewhere. United States v White, supra. In this instance, therefore, we hold that, should accused be retried and convicted in the same command, the review and action on his case should be accomplished by persons not involved in the limited grant of "immunity" to Gordon.

## V

Finally, we are urged to find the record of trial to be non- █ verbatim in light of a memorandum by the law officer—attached to the transcript as

a part of his authentication—in which he notes his dissatisfaction with its many errors, corrections, and generally sloppy preparation, particularly with respect to his instructions. We note also that the law officer concluded it met the standard prescribed in the Code. Code, supra, Article 54, 10 USC § 854; Manual for Courts-Martial, United States, 1951, paragraph 82. While his determination is in nowise binding upon us, we agree with it, for our separate and painstaking examination of the transcript indicates no material omission. See United States v Nelson, 3 USCMA 482, 13 CMR 38. Indeed, counsel for the accused, who represented him at the trial, before the board of review, and before this Court, has called no *lacunae* to our attention. The testimony seems accurately reported and the instructions are not, in view of our action, important. We, therefore, overrule this assignment of error.

## VI

In sum, then, we hold that the admission over defense objection of the two oral depositions in this case was prejudicially erroneous and that a rehearing must be authorized. Further, should the accused be retried and found guilty, the post-trial review should be conducted by officers not involved in the pretrial agreement with Gordon.

The decision of the board of review is reversed, and the record of trial is returned to The Judge Advocate General of the Navy. A rehearing may be ordered.

Chief Judge QUINN and Judge KILDAY concur.