UNITED STATES, Appellee

v

JOSEPH JOHNSON, Private,

U. S. Army, Appellant

20 USCMA 359, 43 CMR 199

No. 23,252

February 26, 1971

*Captain Libero Marinelli, Jr.,* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent, Colonel George J. McCartin, Jr.,* and *Captain Bernard J. Casey.*

*Captain Mark Rosenberg* argued the cause for Appellee, United States. With him on the brief were *Colonel David T. Bryant* and *Captain Benjamin G. Porter.*

## Opinion of the Court

QUINN, Chief Judge:

A general court-martial convicted the accused of three offenses in violation of the Uniform Code of Military Justice. On this appeal, he challenges the validity of the findings of guilty as to one of the offenses on the ground that the deposition of a Government witness was taken under circumstances depriving him of the right to representation by military counsel of his own choice.

When the charges were investigated under Article 32 of the Uniform Code, in March 1969, the accused requested counsel. The command was unable to provide a lawyer from its own staff because all were engaged, but it obtained Captain Mainelli, a judge advocate of another unit stationed in the same area. Mainelli was accepted by the accused and represented him at the investigation. On April 18, the charges were referred to trial. The appointing order of the court-martial designated Captain Menson as defense counsel. On April 19, the case was assigned for trial on April 27, but emergency leave of the law officer resulted in a postponement to May 13. A further postponement was apparently granted for reasons not evident in the record.

The deposition in issue was taken on May 12. The record does not indicate when it was determined that its taking would be necessary, but it is clear that the witness was to leave the area on May 16, and depart Vietnam by May 18. About 4:00 p.m. of the previous day, the accused submitted a request that Captain Mainelli "represent . . . [him] in . . . [his] trial." Captain Mainelli was no longer in the area, but at Cam Ranh Bay.

At the "very minute" of receipt of the accused's request for Captain Mainelli, the chief of military justice of the command telephoned Captain Mainelli at Cam Ranh Bay to advise him of it and of the impending deposition. Mainelli indicated that he did not "think" he would be available for appointment as defense counsel, and in any event, he could not attend the deposition. He suggested that, until his own command could make a formal determination as to his availability, Captain Menson "stand in for" him because Menson had "fully discussed the case" with the accused and knew "the questions . . . to be asked."

Before the deposition, Captain Menson and the accused were informed of Captain Mainelli's response to the accused's request. Nevertheless, at the deposition, the accused contended that,

since he had asked for Captain Mainelli, Menson was not his "proper counsel," and he wished "to be excused" from attending the deposition. He admitted that if Captain Mainelli had informed him "sort of person-to-person" it was agreeable to him that Menson continue as defense counsel for the deposition, Menson would be "acceptable" to him; as the matter then stood, however, he did not "feel secure with" Captain Menson and he did not want to be represented by him. The deposition officer noted the accused's objection but continued with the deposition, and Captain Menson actively participated in it by cross-examining the witness.[1]

On May 17, the request for Captain Mainelli's appointment as defense counsel was formally denied because of his unavailability. On the same day, Captain Menson, still acting as defense counsel, requested a delay in trial in order to afford the accused an opportunity to obtain civilian counsel. The request was granted and trial was postponed to June 19. In the interim, the accused participated, without objection, in two other depositions, with Captain Menson as his counsel. A further postponement, at the defense request, delayed trial until July 19. At that time, the accused appeared with Captain Menson as his counsel. Examined by the law officer, he indicated he knew his right to representation by individual military counsel and civilian counsel, but he was satisfied with Captain Menson and desired to be represented by him. At an appropriate point in the proceedings, Captain Menson objected to the admission into evidence of the deposition on the ground that in its taking the accused had been deprived of his right to military counsel of his choice.

Captain Menson's appearance as defense counsel at the other depositions and at the trial led the Government to challenge the accused's good faith in requesting representation by Captain Mainelli, at the May 12th deposition. The Court of Military Review rejected the challenge. We accept that finding as determinative of the issue. We also accept a finding, by the court, as amply supported by the evidence, including admissions by the accused, that a viable attorney-client relationship existed between him and Captain Menson at the time of the deposition in issue. The question, therefore, is whether the accused was entitled to discharge Captain Menson summarily and postpone the taking of the deposition for such time as was required to obtain a decision on his request for Captain Mainelli.

Putting aside consideration of whether the sufficiency of the accused's reason for dissatisfaction with Captain Menson is relevant to the issue (compare the principal opinion in United States v Miller, 7 USCMA 23, 28, 21 CMR 149 (1956), with United States v Donati, 14 USCMA 235, 34 CMR 15 (1963); see also United States ex rel Baskerville v Deegan, 428 F2d 714 (CA 2d Cir) (1970); United States v McMann, 252 F Supp 539 (ND NY) (1966), affirmed, 386 F2d 611 (CA 2d Cir) (1967), certiorari denied, 390 US 958, 19 L Ed 2d 1153, 88 S Ct 1049 (1968)), we start with the settled rule that grant or denial of a continuance rests in the sound discretion of the officer responsible for the proceeding, and his ruling will not be set aside unless there was a clear abuse of discretion. United States v Daniels, 11 USCMA 52, 54–55, 28 CMR 276 (1959); United States v Davis, 19 USCMA 217, 224, 41 CMR 217 (1970). We considered application of that principle in the context of a deposition in United States v Donati, supra.

In *Donati*, we determined that denial of a continuance was an abuse of dis-

---

[1] For the purpose of this appeal, we need not decide whether the application for relief was properly addressed to the deposition officer. Compare subdivision (5), paragraph 117b, Manual for Courts-Martial, United States, 1969 (Revised edition), with subdivision (7), paragraph 117b. Neither need we consider the effect of Captain Menson's cross-examination of the witness. See United States v Donati, 14 USCMA 235, 34 CMR 15 (1963).

cretion and constituted prejudicial error. The circumstances of *Donati*, however, are substantially different from those in this case. We noted in *Donati* that the Government's only justification for continuing with the taking of the deposition was "simple inconvenience to it" that might result from postponement. *Id.*, page 240. Here, the witness was due to leave the area within three days and to depart from the country under circumstances that indicated his probable unavailability for the trial. Postponement of the taking of his deposition might have resulted in irreparable harm to him and the Government, without any material benefit to the accused. As Mainelli indicated, Menson was familiar with the witness' probable testimony and he knew "the questions . . . to be asked." Cf. United States v Miller, supra, page 29. Even more important, Mainelli declared that he definitely could not attend the deposition and he anticipated that he would be unavailable for appointment as the accused's counsel. A request for a continuance based upon a reason that will probably prove futile may properly be denied. Johnson v Coiner, 308 F Supp 1373 (SD W Va) (1970); United States ex rel Jackson v Follette, 425 F2d 257 (CA 2d Cir) (1970). As was noted in the principal opinion in United States v Daniels, supra, page 55, there should be no hesitancy to continue with the proceedings "if it is clear that there is little merit to be obtained from a postponement."

On this record, we are satisfied that denial of the accused's request for postponement of the deposition was not an abuse of discretion. Bowman v United States, 409 F2d 225 (CA 5th Cir) (1969), certiorari denied, 398 US 967, 26 L Ed 2d 552, 90 S Ct 2183 (1970); Gilmore v United States, 273 F2d 79 (CA DC Cir) (1959); cf. United States v Worden, 17 USCMA 486, 38 CMR 284 (1968). It follows that the deposition was properly admitted into evidence at trial.

The decision of the United States Army Court of Military Review is affirmed.

Judge DARDEN concurs.

FERGUSON, Judge (dissenting):

I dissent.

We granted review in this case to consider the narrow issue of whether the admission into evidence of a deposition (Prosecution Exhibit III) constituted prejudicial error on the ground that it was obtained in derogation of the accused's right to military counsel of his own selection. I believe, however, that the issue goes deeper than that and encompasses the entire question of the military services' apparent attitude toward the attorney-client relationship.

In a series of cases (see Tedrow, Digest, Annotated and Digested Opinions, U.S. Court of Military Appeals, Counsel, pages 185–217) this Court has considered and decided, generally on a case-by-case basis, the many questions which have arisen with regard to this relationship and its impact on the particular case then under consideration. I need not detail them. It is enough to note that, in my almost fifteen years on the bench of this Court, I have observed a sufficient number of instances of what can only be described as unconcern, on the part of those responsible, for the establishment and protection of this relationship, to justify the conclusion that there exists, albeit subconsciously, a distinct lack of appreciation for the personal involvement of an attorney with his client.

The most recent instance of this nature occurred in United States v Murray, 20 USCMA 61, 42 CMR 253 (1970). In that case, Captain Leavitt was appointed by the convening authority on June 14, 1968, to defend the accused. From that date until August 30, 1968, the record reflects that he vigorously pursued his duties in that regard. On September 3, 1968, Lieutenant Highland informed the accused that he would thereafter represent him as Captain Leavitt had been transferred to Hawaii on a permanent change of

duty station as of August 30th. Subsequent efforts to have Captain Leavitt made available for trial resulted in a reply from Navy headquarters in Hawaii that he was not *reasonably available* for such assignment. Captain Leavitt was aware of his transfer orders in early July. On August 16th, trial date was set for September 3d. Since he was due to depart the base on August 30th and to report in Hawaii on September 19th, Captain Leavitt informed Captain Roach, senior man in the defense section, of his imminent departure and the fact that the accused desired Captain Leavitt to defend him at trial. Captain Leavitt stated he would be available to defend the accused *after* August 30th, if necessary. This information was furnished by Captain Roach to the staff judge advocate on August 19th. Later, Captain Roach learned that Captain Leavitt would be permitted to detach and that other people would be assigned his cases.

As we viewed the record, the convening authority in *Murray* had several courses of action open to him. When he learned of Captain Leavitt's imminent departure he could have had the staff judge advocate reschedule the trial to a date prior to August 30th or have taken appropriate action to delay Captain Leavitt's detachment date until after September 3d. In addition, he could have accepted Captain Leavitt's offer to remain in the command until after the trial since the Captain was not due at his new command for more than two weeks thereafter. Failure to follow any one of these routes until after Leavitt's departure, in our opinion, effectively deprived Murray of the services of his appointed counsel and required reversal of his conviction. As we said in *Murray* at page 62:

". . . Once entered into, the relationship between the accused and his appointed military counsel may not be severed or materially altered for administrative convenience. United States v Tellier, 13 USCMA 323, 32 CMR 323 (1962)."

In the case at bar, Captain Mainelli, a judge advocate from a command other than that to which the accused was attached, was appointed to defend the accused at the Article 32 investigation because the command was unable to provide a lawyer from its own staff. Mainelli was accepted by the accused and represented him at that investigation. When the charges were referred to trial, however, Captain Menson, a member of the accused's command, was appointed to defend the accused at trial. The accused obviously was not consulted about the change in attorneys for, at the time of the taking of the deposition in question, he requested to be excused until such time as Captain Mainelli, whose services he had requested in writing, could be present. As he stated at that time: "Sir, I don't know Captain Menson's qualifications. I say, as I stated before, I'd like to have a person that I would feel secure with." Despite his objection and the request of Captain Menson that the proceedings be terminated, the deposition was taken. The blatant disregard for the accused's right to counsel of his choice (Article 38(b), Uniform Code of Military Justice, 10 USC § 838), *with whom, in this case, he had already established an attorney-client relationship,* is abundantly clear from that portion of the deposition which I have appended to my opinion.[1] The removal of Captain Mainelli as accused's attorney and the substitution of Captain Menson for "administrative convenience" (Mainelli was assigned to another command), in my opinion, effectively deprived the accused of the services of his appointed counsel and requires reversal of his conviction. United States v Murray, supra.

The relationship between an attorney and client is *personal* and *privileged.* It involves *confidence, trust,* and *cooperation.* There is more to creating the relationship of attorney and client than the mere publication of an order of appointment, and this Court has so suggested in an earlier opinion. An

---

[1] See Appendix.

accused's right to counsel of his own choice, and the necessity of a finding that he has consented to representation by appointed counsel, was recognized by this Court in United States v Goodson, 1 USCMA 298, 300, 3 CMR 32 (1952), where we said:

". . . He [the accused] is entitled to select counsel of his own choice, and may object to being defended by the person appointed if he desires to do so."

Where counsel is appointed to represent one charged with an offense, the offender is entitled to protest, if the lawyer selected is objectionable to him. See United States v Miller, 7 USCMA 23, 21 CMR 149 (1956).

The designation of Captain Menson to represent the accused by the court-martial authority did not create an attorney-client relationship between them. United States v Nichols, 8 USCMA 119, 23 CMR 343 (1957); United States v Brady, 8 USCMA 456, 24 CMR 266 (1957). "There must be an acceptance of the appointment by the accused." United States v Brady, supra, at page 460. Johnson's later agreement to be defended at trial by Captain Menson, did not, in my opinion, relieve the Government of its obligation not to arbitrarily interfere with the attorney-client relationship between the accused and Captain Mainelli. As Captain Menson stated at trial, the accused did not again raise the issue because "[h]is request has already been turned down, sir." In reply to the accused's written request he had been informed that "[b]ecause of the heavy workload within this command, Captain Mainelli is not available to defend Private Johnson." If the convening authority had not improperly removed Mainelli as counsel for the accused, Mainelli's obligation to the accused would have been considered in the assignment to him of additional responsibility. In such circumstances, I do not believe that it can be said that the accused freely and voluntarily abandoned his request to be defended by counsel of his choice, *with whom he had already established a firm attorney-client relationship*. The rights secured by Article 38(b), Code, supra, are fundamental to military due process. United States v Murray, supra. See also United States v Tavolilla, 17 USCMA 395, 38 CMR 193 (1968); United States v Koren, 17 USCMA 513, 38 CMR 311 (1968).

Since I believe that the accused was denied due process of law, I would reverse the decision of the Court of Military Review and direct that a rehearing may be ordered.

## APPENDIX

"UNITED STATES
v.
Private El Joseph Johnson
RA 16 900 874
Company B,
84th Engineer Battalion (Const)
APO San Francisco 96226
US Army
}
DEPOSITION

TC: Let the record reflect that this deposition proceeding commenced at 1615 hours, on 12 May 1969, at the USARV Courtroom, located at Long Binh, Republic of Vietnam. The deposition of 1LT W. G. McGraw, of Headquarters Company, I believe 84th Engineer Battalion, is being taken at the request of the prosecution in the case of the United States versus Private Joseph Johnson, United States Army, RA 16 900 874, of Company B, 84th Engineer Battalion (Construction), APO San Francisco 96226.

Present at the deposition are:

1LT Thomas J. Freitas, Deposition Officer;
CPT Richard L. Menson, Detailed Defense Counsel;
CPT Elmer A. Gates, Trial Counsel;
SP5 Thomas Darity, Reporter;
1LT W. G. McGraw, Deponent;
PVT Joseph Johnson, Accused.

DO: The reporter will now be sworn.

(The reporter was sworn by the deposition officer.)

DO: The trial and defense counsel will now be sworn.

(The trial and defense counsel were sworn by the deposition officer.)

DO: The deponent will now be sworn.

(The deponent was sworn by the deposition officer.)

TC: The record will reflect that the reporter, trial and defense counsel and the deponent were sworn. The letter appointing the deposition officer will be marked as an exhibit and made a part of this record.

(The exhibit was marked Deposition Exhibit 1 by the reporter.)

TC: Captain Menson, do you have any objections to be presented at this time?

DC: Yes, at this time, under paragraph 117(b)(2), under rights of the accused, the accused wishes to be excused from this proceeding. Pursuant to this paragraph, it says that the accused and his counsel with whom he has established an attorney-client relationship shall be present at the taking of the deposition unless the accused consents to the taking of the deposition in absence of himself, his counsel, or both. The accused has expressed a desire to me to be absent from the taking of this deposition, and under this paragraph we wish that the accused be excused from the taking of this deposition.

DO: The objection will be noted in the record.

TC: All right. May I ask, Private Johnson, is that your wishes and desires?

PVT JOHNSON: Yes, sir, it is.

TC: Do you have any other objections or anything you would like to say at this time for the record?

PVT JOHNSON: Excuse me, sir, I don't have the proper counsel and that's why I wish to be excused.

TC: And who do you consider proper counsel?

PVT JOHNSON: I asked for Captain Mainelli, sir.

TC: Are you aware of the fact that the request for Captain Mainelli is now being—in process?

PVT JOHNSON: No, sir, I'm not aware of the fact, sir.

TC: Are you aware of the fact that Captain Mainelli has been in contact with the Chief of Military Justice, Staff Judge Advocate's Office, Engineer Troops, and has given his consent to Captain Menson's representing you at this deposition?

PVT JOHNSON: Sir, I was told this, sir.

TC: Who were you told that by?

PVT JOHNSON: I was told this by various captains that work here in this office, sir.

TC: Do you remember their names?

PVT JOHNSON: Captain Menson and Captain Hartley, sir; I'm not sure.

TC: Do you doubt the truth of that statement or are you objecting just merely on the basis of the fact that you do not wish Captain Mainelli to waive this particular requirement?

PVT JOHNSON: Sir, I feel that I shouldn't be at a 'disposition' unless I have a counsel that I feel secure with.

TC: Well, maybe, Captain Menson, you can clarify it for the record. Is his objection based on the fact that he does not desire to go along with Captain Mainelli's recommendations and approval?

DC: I don't feel I'm able to answer that. I feel Private Johnson is able to answer that better than I am.

TC: Let me ask you this, Private Johnson, if Captain Mainelli were to give his consent or has given his consent, would you go along with that consent?

PVT JOHNSON: Yes, sir, I would.

TC: Does the defense have any further objections to be made at this time?

DC: Is the proceeding going to—

TC: No, the proceeding will not terminate at this time. I think that without a lengthy review of the law on this particular matter, I feel that as trial counsel, Private Johnson, I have the right to require your attendance and your presence at a taking of a deposition, and I intend to put on the record the reason for the taking of the deposition at this time; and because of that, I will not allow you to be dismissed. Does the defense have any other questions?

DC: Yes. My client has expressed a desire not to have me present, I think from his last statement, that he didn't feel me qualified to be here at this deposition. Therefore, I wish this deposition proceeding to be terminated immediately, until counsel who the accused wishes to be here or will feel satisfied being here, since he expressed no confidence in me as acquired for him.

TC: May I see the Manual?

(Trial counsel examines Manual for Courts-Martial.)

TC: I direct the question to you again, Private Johnson: do you feel that Captain Menson cannot adequately represent you at the taking of this deposition?

PVT JOHNSON: Sir, I don't know Captain Menson's qualifications. I say, as I stated before, I'd like to have a person that I would feel secure with.

TC: In other words, if I understood your objection correctly, you—that is exactly what your objection is, that you would like to have Captain Mainelli here?

PVT JOHNSON: Yes, sir, I would.

TC: And that you make no specific objection to Captain Menson, you just have a preference over Captain Menson?

PVT JOHNSON: No, sir. I do make an objection to Captain Menson, sir.

TC: Well, do you feel like that he cannot adequately represent your interests here?

PVT JOHNSON: Sir, I don't know what he can really do, sir; I can't say this.

TC: And I believe you previously stated that if Captain Mainelli had granted his permission, had actually made a request that Captain Menson represent you as to a particular hearing, that would be acceptable to you?

PVT JOHNSON: Well, if he would have made it sort of person-to-person, sir, it would be acceptable to me. I just can't take hearsay, sir.

TC: Right. But if he had done it, you would have accepted that?

PVT JOHNSON: No, sir, I wouldn't.

TC: You would not have accepted it?

PVT JOHNSON: No, sir, I would not.

TC: Well, may I ask has Captain Menson acted as your detailed defense counsel for some period of time prior to the taking of this deposition?

PVT JOHNSON: Well, sir, he was assigned.

TC: Have you discussed your case with him?

PVT JOHNSON: Yes, I have, in a sense, sir.

TC: Then you have in fact entered into an attorney-client relationship with Captain Menson?

PVT JOHNSON: To a small degree, sir.

TC: Based on the fact that Captain Menson has been detailed to represent you and because he has not been relieved or removed from that capacity by the Commanding General, I believe he still has the authority to act in that capacity for you; and for that reason, I will not allow him to be excused either. You have any other objections?

DC: I would still like to reiterate my objection to the taking of this proceeding, in any manner, way, shape or form. I think that we have had enough here to show that the accused

feels that his substantial rights are being prejudiced.

DO: Let the objection be noted in the record.

TC: The prosecution has no objections at this time.

PROS. EX. III."