*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————————

### UNITED STATES
Appellee

**v.**

### David C. TATE, Staff Sergeant
United States Army, Appellant

**No. 21-0235**

Crim. App. No. 20180477

Argued December 8, 2021—Decided May 23, 2022

Military Judge: Michael S. Devine

For Appellant: *Captain Lauren M. Teel* (argued); *Colonel Michael C. Friess* and *Major Rachel P. Gordienko* (on brief); *Lieutenant Colonel Angela D. Swilley*, *Major Alexander N. Hess*, *Major Kyle C. Sprague*, and *Captain Thomas J. Travers*.

For Appellee: *Captain Dustin L. Morgan* (argued); *Colonel Christopher B. Burgess*, *Lieutenant Colonel Craig Schapira*, and *Major Pamela L. Jones* (on brief); *Captain Karey B. Marren*.

Judge HARDY delivered the opinion of the Court, in which Chief Judge OHLSON, Judge SPARKS, Judge MAGGS, and Senior Judge CRAWFORD joined.

———————————

Judge HARDY delivered the opinion of the Court.

During the first day of Appellant's sentencing hearing, the court's recording device failed, resulting in there being no verbatim transcript for most of the day's proceedings. Although the Rules for Courts-Martial (R.C.M. or Rules) generally require the record of trial to "include a verbatim transcript of all sessions except sessions closed for deliberations" in serious cases—and impose consequences when that requirement cannot be satisfied—until 2019 the Rules did not authorize any remedial actions that a court could perform to cure a nonverbatim transcript.

R.C.M. 1103(b)(2)(B), (f) (2016 ed.).[1] In the absence of any guidance from the Rules, military courts have long authorized three potential solutions when court recording devices fail: (1) declaring a mistrial; (2) reconstructing the record of trial; and (3) starting anew. In this case, the military judge stated that he was going to start Appellant's sentencing hearing anew, but the record indicates that he neither started anew nor performed one of the other two judicially approved remedies.

Contrary to his stated intent, the military judge indicated during the second sentencing hearing that he would *only* consider the testimony of the Government's witnesses that fell within the scope of their unrecorded testimony from the previous day. His choice to disregard testimony from the second hearing if it went beyond the witnesses' lost testimony from the first hearing resulted in a hybrid proceeding that did not start the proceedings anew but was instead dependent on—and intrinsically tied to—the unrecorded testimony from the first day of sentencing. Accordingly, we reverse the decision of the United States Army Court of Criminal Appeals (ACCA), set aside the sentence, and remand the case to the Judge Advocate General of the Army for return to an appropriate convening authority for action consistent with R.C.M. 1103(f) (2016 ed.).

## I. Background

At the time of his alleged offense, Appellant was an E-6 staff sergeant serving at Fort Huachuca, Arizona. On September 18, 2018, a military judge sitting as a general court-martial convicted Appellant, pursuant to his plea, of one charge and one specification of aggravated assault in violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928 (2018), for strangling his wife. The same day, the military judge began Appellant's sentencing hearing.

Upon returning the next day to complete sentencing, trial counsel discovered that the court's recording device had failed to capture the previous day's sentencing proceedings,

---

[1] In 2019, the President expressly authorized military judges to take one of four corrective actions to cure an incomplete or defective record of trial. R.C.M. 1112(d)(3) (2019 ed.).

including: (1) the military judge notifying Appellant of his rights during sentencing, (2) the Government's presentation of its case, which entailed both documentary evidence and witness testimony, (3) a victim impact statement, (4) the defense's first witness, and (5) some of the defense's documentary evidence. The military judge then held a R.C.M. 802(a) conference with the parties to discuss the recording malfunction, and he subsequently announced in court:

> [I]t is the court's intent to start over from the point of the sentencing case where I informed the accused that we are entering the sentencing phase of the trial, I notified him of his rights during this phase of the trial, and to allow the government to present their case anew.

The military judge repeatedly emphasized that he would "not consider anything [he] heard during the sentencing portion of the case yesterday afternoon from any witness . . . unless either party decides to reoffer such evidence during the sentencing hearing." Appellant objected, arguing R.C.M. 1103(f) (2016 ed.) required Appellant's sentencing exposure to be limited to six months confinement and no punitive discharge because there was no verbatim transcript. The military judge overruled Appellant's objection, stating that he intended to start anew and "wash out" the old proceeding as if it "never occurred." The military judge clarified that these procedures were not a reconstruction of the lost testimony, stating "it is not the court's intention to attempt to recreate a substantially verbatim transcript or even a summarized transcript."

In the second sentencing hearing, the Government presented a slightly different case than it had during the initial hearing. Due to the unavailability of one of its witnesses, the Government declined to call that witness and proceeded without his testimony. The Government also decided not to present one sentencing exhibit, a video that had audio issues during the first hearing. In addition, several Government witnesses testified to new information that was outside the scope of their initial unrecorded testimony.

In issuing Appellant's sentence, the military judge announced that he had disregarded the new testimony from

the Government witnesses because it was outside the scope of their previous unrecorded testimony. He stated, "I *did not consider* any aggravation testimony by government witnesses . . . . [t]hat such witnesses had not so testified when first called as a witness during which time their testimony had not been recorded." Transcript of Record at 474–75, *United States v. Tate*, __ M.J. __ (C.A.A.F. 2022) (No. 21-0235) [hereinafter Record] (emphasis added). The military judge did not further describe the portion of the recorded testimony that he disregarded.

The military judge sentenced Appellant to confinement for twenty-two months, reduction to E-3, and a bad-conduct discharge. The convening authority approved the finding of guilt and all of the sentence except the confinement, which he reduced to twenty-one months due to post-trial delays. Appellant appealed to the ACCA arguing that his sentence was procedurally deficient under R.C.M. 1103(b)(2)(B) (2016 ed.) because the record of trial lacked a substantially verbatim transcript.

Initially, the ACCA held there was no substantially verbatim transcript and that the military judge was limited in his ability to start the proceedings anew under R.C.M. 1103(f) (2016 ed.). *United States v. Tate*, No. ARMY 20180477, 2020 CCA LEXIS 344, at *10–11, 2020 WL 5760851, at *4–5 (A. Ct. Crim. App. Sept. 25, 2020) (unpublished). The lower court held the record was not verbatim because the Government omitted a witness and there was no record or indication of that witness's testimony. *Id.* at *9, 2020 WL 5760851, at *4. Additionally, because R.C.M. 1103(f) (2016 ed.) states that when a verbatim transcript cannot be prepared due to a recording failure, the convening authority may approve only a limited portion of the sentence or direct a hearing, the ACCA determined the military judge acted outside his authority when he ordered the sentencing be started anew. *Id.* at *5–6, 2020 WL 5760851, at *2. The ACCA set aside the sentence and returned the case to the convening authority to order a rehearing. *Id.* at *11, 2020 WL 5760851, at *5. The Government petitioned for reconsideration.

Sitting en banc, the ACCA then reversed and held the convening authority properly approved the sentence because

there was a verbatim transcript. *United States v. Tate*, No. ARMY 20180477, 2021 CCA LEXIS 87, at *1–2, 2021 WL 734023, at *1 (A. Ct. Crim. App. Feb. 25, 2021) (en banc) (unpublished). The ACCA held the renewed sentencing proceedings did not constitute a rehearing under R.C.M. 1103(f) (2016 ed.) because the recording failure was discovered before adjournment. *Id.* at *9–12, 2021 WL 734023, at *4. Because the failure was discovered prior to adjournment, the ACCA held that the imposed remedy was within the military judge's authority as the presiding officer of the court-martial pursuant to R.C.M. 801(a). *Id.* at *11–12, 2021 WL 734023, at *4. The lower court further reasoned that the military judge's choice to start anew was not only sufficient to create a substantially verbatim transcript but the proper and preferred remedy. *Id.* at *17–18, 2021 WL 734023, at *7. We granted review to decide:

> Whether the transcript of Appellant's trial is substantially verbatim.

*United States v. Tate*, 81 M.J. 445 (C.A.A.F. 2021) (order granting review).

## II. Discussion

Whether a transcript is substantially verbatim is a question of law that this Court reviews de novo. *United States v. Davenport*, 73 M.J. 373, 376 (C.A.A.F. 2014). Our analysis proceeds in two parts. First, the Court must decide whether the transcript was substantially verbatim. If it is not, we must decide whether the military judge's remedy upon discovering the recording malfunction was proper and sufficient such that it resulted in a substantially verbatim transcript.

## A. Substantially Verbatim Transcript

The Rules mandate the preparation of a verbatim transcript for any general court-martial where the adjudged sentence includes confinement for twelve months or more or a bad-conduct discharge. R.C.M. 1103(b)(2)(B) (2016 ed.); *see also* Article 54, UCMJ, 10 U.S.C. § 854 (2012) (requiring a complete and authenticated record of the proceedings in all general courts-martial). There is no dispute that in this case, where the military judge sentenced Appellant to twenty-one

months confinement and a bad-conduct discharge, a verbatim transcript was required. R.C.M 1103(b)(2)(B) (2016 ed.).

A verbatim transcript must include "all proceedings including sidebar conferences, arguments of counsel, and rulings and instructions by the military judge." R.C.M. 1103(b) Discussion (2016 ed.). This Court has repeatedly held that a transcript need not be *actually* verbatim but will suffice when it is *substantially* verbatim. *Davenport*, 73 M.J. at 376 (citing *United States v. Henry*, 53 M.J. 108, 110 (C.A.A.F. 2000)); *United States v. Gray*, 7 M.J. 296, 297 (C.M.A. 1979) ("This Court consistently has . . . require[d] such proceedings to be substantially verbatim."). The lack of a verbatim transcript is a jurisdictional error that cannot be waived. *Henry*, 53 M.J. at 110.

To determine whether a transcript is verbatim, the threshold question is whether the omitted material was qualitatively or quantitatively substantial. *United States v. Lashley*, 14 M.J. 7, 9 (C.M.A. 1982) ("Insubstantial omissions from a record of trial . . . do not affect its characterization as a verbatim transcript." (quoting *United States v. McCullah*, 11 M.J. 234, 236–37 (C.M.A. 1981)); *see also United States v. Donati*, 14 C.M.A. 235, 34 C.M.R. 15 (1963). An omission is qualitatively substantial when it directly relates to the sufficiency of the government's evidence on the merits and cannot be recalled with any degree of fidelity. *Lashley*, 14 M.J. at 9. Omissions are quantitatively substantial unless the "totality of the omissions in [the] record becomes so unimportant and so uninfluential when viewed in light of the whole record, that it approaches nothingness." *United States v. Nelson*, 3 C.M.A. 482, 487, 13 C.M.R. 38, 43 (1953).

In this case, the Government concedes that the recording device's failure to capture the sentencing proceedings on September 18, 2018—including approximately four hours of witness testimony and the introduction of multiple documentary exhibits—resulted in loss that was both qualitatively and quantitatively substantial. Brief for Government at 16, *United States v. Tate*, No. 21-0235 (C.A.A.F. Oct. 18, 2021). We agree. First, the omissions here were far more expansive than the blanks in the record caused by the stop-and-go recording during the testimony of a single witness that our predecessor Court found qualitative in

*Lashley*. 14 M.J. at 9. The loss in this case encompassed the military judge's explanation of Appellant's rights, the entirety of the Government's case, and the start of Appellant's sentencing case. Additionally, the omissions were quantitatively substantial—they were of such a scope that it is impossible to suggest that the omitted recordings could be considered approaching nothingness. For these reasons, the failed recording resulted in substantial omissions in the record such that the record was not verbatim.

## B. The Military Judge's Remedy

When confronted with a substantial omission in the transcript, the military judge must decide how to proceed. Because it is not uncommon for recording devices to fail, military judges and the lower courts have created a variety of procedures to cure this issue when the military judge becomes aware of it before the conclusion of the case. Military judges across the branches have recognized three remedies for curing substantial omissions and creating a verbatim transcript prior to the conclusion of the court-martial.

### i. Declaring a Mistrial

The first method of remedying the loss of a recording is declaring a mistrial. Our predecessor Court recognized the validity of this approach in *United States v. Schilling*, 7 C.M.A. 482, 483, 22 C.M.R. 272, 273 (1957). In *Schilling*, after it was discovered during closing arguments that the recording machine had failed to record a "great deal of the proceedings," the military judge declared a mistrial. *Id.*, 22 C.M.R. at 273. The Court held that under those circumstances, continuing the trial was "impossible" because the record was "so legally defective that it could not support a conviction," and that the military judge was "justified" in declaring a mistrial. *Id.* at 484, 22 C.M.R. at 274.

Although the decision in *Schilling* is devoid of any reference to the *Manual for Courts-Martial, United States* (*MCM* or *Manual*), we note that the 1951 edition of the *Manual* expressly stated: "A mistrial may also be declared on the [law officer]'s own motion even in the face of objection by the accused when a free and fair trial cannot be had." *MCM*, ch. XII, para. *69e* (1951 ed. Supp. 1959). A version of this provision exists in every following edition of the *Manual*,

lodging itself firmly in R.C.M. 915(a) starting in 1984. *See, e.g.*, R.C.M. 915(a) (1984 ed.); R.C.M. 915(a) (2000 ed.); R.C.M. 915(a) (2019 ed.). We thus have no doubt that a military judge has the authority to declare a mistrial when the Rules require a verbatim transcript, but none exists.[2]

### ii. Reconstruction

A second common remedy for lost recordings is reconstructing the record. A reconstruction occurs when the necessary actors—the military judge, with the assistance of the parties, and relevant witnesses—act promptly and thoroughly to recreate the lost testimony through their collective memories and notes. *See Lashley*, 14 M.J. at 9 (approving the military judge's attempt to reconstruct substantial lost proceedings due to the "unusual combination of factors present" in that case). There are, however, limits to what can be reconstructed. If the reconstruction results in a record that is equivocal such that it leaves uncertainty as to the substance of the lost testimony, it will not suffice. *See Davenport*, 73 M.J. at 378 (holding that without certainty about the substance of lost testimony, the reconstruction fails and the transcript is not verbatim).

Although reconstruction was originally a judicially created remedy without any clear basis in the *Manual*, the President expressly authorized military judges to reconstruct incomplete or defective records of trial in 2019. R.C.M. 1112(d)(3)(A) (2019 ed.). Neither Appellant nor the Government has challenged the pre-2019 cases that sanctioned reconstruction as a remedy for lost recordings.

### iii. Starting Anew

The third remedy military judges have relied upon to cure nonverbatim transcripts—and the one purportedly employed by the military judge in this case—is "starting anew." When this remedy is employed, the military judge expunges the lost

---

[2] Since 2019, R.C.M. 1112(d)(3)(D) has authorized a military judge to cure a defective or incomplete record of trial by declaring a mistrial as to the affected specifications "if the error was raised by motion or on appeal by the defense." We do not decide whether this provision altered the scope of a military judge's authority to declare a mistrial under R.C.M. 915(a) to cure a recording failure.

proceedings and restarts the unrecorded session from scratch. *See United States v. Howard*, 9 M.J. 873, 875 (N.M.C.M.R. 1980) (concluding that there was no prejudice to the appellant when the military judge "announced he was beginning de novo because of the failure of the recording machine" and "that he would not consider any testimony previously given"). This remedy is frequently paired with an express instruction to the panel to disregard the unrecorded testimony or a statement from the military judge saying she has disregarded the unrecorded proceedings to start anew. *See, e.g., United States v. Griffin*, 17 M.J. 698, 699 (A.C.M.R. 1983); *Howard*, 9 M.J. at 875. The Army, Navy-Marine Corps, and Air Force Courts of Criminal Appeals have all recognized starting anew as a valid remedy for failed recordings. *See, e.g., Griffin*, 17 M.J. at 699 (describing starting anew as "the preferred method of handling unrecorded testimony"); *Howard*, 9 M.J. at 875 (holding that there was no prejudice to the accused when the military judge started lost proceedings anew and proclaimed he would "not consider any testimony previously given"); *United States v. English*, 50 C.M.R. 824, 825 (A.F.M.R. 1975) (describing starting anew as "correct in law and fact" and commending its use by the military judge).

This Court has never expressly endorsed starting anew—which is also a judicially created procedure without clear basis in the *Manual*—as a remedy for lost recordings. The Government asserts in its brief that our predecessor Court at least implicitly endorsed starting anew in *United States v. Platt*, a case in which a Dictaphone failed to record two hours of an Article 39(a), UCMJ, 10 U.S.C. § 839(a), hearing and the military judge remedied the loss by declaring a "mistrial" and restarting the hearing. 21 C.M.A. 16, 17, 44 C.M.R. 70, 72 (1971). The Government is correct that *Platt* repeatedly described the remedy in that case as proceeding "anew," and that this Court used that label in a subsequent case, albeit without any analysis. *Lashley*, 14 M.J. at 9. But this case directly presents the question whether starting anew is a lawful procedure, and if so, what is required to properly start anew. Careful examination of *Platt* demonstrates that, although our predecessor Court referred to the procedure in that case as starting "anew," the military judge did not actually start anew, as least not as we understand that term.

In *Platt*, because the Court was primarily concerned with the appellant's argument that the court-martial lacked jurisdiction over the appellant once the military judge declared a "mistrial," the Court did not spend much time analyzing the propriety of the imposed remedy. Nevertheless, Judge Quinn—who declined to decide whether the military judge had declared an actual mistrial—concluded that the appellant was not prejudiced because "the substance [of the lost hearing] was fully recorded" during the second hearing. *Id.* at 18, 44 C.M.R. at 72. Similarly, Chief Judge Darden, in his concurrence, rejected the appellant's argument that the military judge had actually declared a mistrial (describing the misuse of the term of art as a "slip of the tongue"), and described the repeated hearing as "a repetition of testimony." *Id.* at 20, 44 C.M.R. at 74 (Darden, C.J., concurring).[3] In our view, what distinguishes the remedy of starting anew from the remedy of reconstruction is that when starting anew, the original lost proceeding is expunged. It therefore would not matter whether the second proceeding captures the substance of the lost recording or whether the witnesses repeated the same testimony. The original proceeding becomes not just irrelevant, but legally null and void. Accordingly, whether starting anew is a valid remedy for curing a nonverbatim transcript is a matter of first impression for this Court.

In this case, after the failure of the courtroom recording device was discovered, the military judge announced that he was going to start the sentencing proceedings anew. He never declared a mistrial, and he expressly rejected labeling the procedures as a reconstruction of the lost testimony. Appellant challenges the military judge's actions as unauthorized under either this Court's precedent or the Rules. Brief for Appellant at 16, *United States v. Tate*, No. 21-0235 (C.A.A.F. Sept. 2, 2021). Although Appellant concedes that "starting 'anew' is an authorized method for ensuring the record is substantially verbatim," he defines starting anew as "reconstructing or recreating what was lost—not beginning a new and different proceeding, unless a

---

[3] Senior Judge Ferguson, writing in dissent, also characterized the military judge's remedy in *Platt* as an attempt to "reconstitute[]" the lost record of the hearing. *Id.* at 22, 44 C.M.R. at 76 (Ferguson, S.J., dissenting).

mistrial is declared or the convening authority orders it under RCM 1103(f)." *Id*. To answer Appellant's challenge, we consider two questions. First, whether starting anew—as that process has been established by the CCAs—is a lawful method for curing nonverbatim transcripts caused by lost recordings. And if so, whether the military judge's actions in this case properly started the lost sentencing proceedings anew.

With respect to the first question, Appellant correctly notes that in affirming the military judge's actions, the ACCA "cited no Rule for Court[s]-Martial permitting the military judge to conduct an entirely different sentencing proceeding." *Id.* at 19. Indeed, we have found no instance where a CCA has ever cited any provision of the *Manual* when approving starting anew as a remedy for lost recordings. At oral argument, the Court considered whether the remedy of starting anew could be grounded in the final sentence of R.C.M. 915(a). That rule states:

> The military judge may, as a matter of discretion, declare a mistrial when such action is manifestly necessary in the interest of justice because of circumstances arising during the proceedings which cast substantial doubt upon the fairness of the proceedings. A mistrial may be declared as to some or all charges, and as to the entire proceedings or *as to only the proceedings after findings*.

R.C.M. 915(a) (2016 ed.) (emphasis added). We note that the *Manual* has included a provision authorizing the military judge to declare a mistrial with respect to only those proceedings after findings since 1969. *See MCM*, ch. X, para. 56.*e.*(1) (1969 ed.) ("A mistrial may be declared respecting the entire proceedings or respecting only the proceedings after findings.").

If the military judge had declared a post-findings mistrial pursuant to R.C.M. 915(a) in this case, the result would have been nearly equivalent to the starting anew procedure that has been established by the CCAs and that the military judge attempted to employ. The lost proceedings would have been "washed out" as if they had never occurred, and the sentencing phase of the court-martial could have started anew without regard for what had happened during the first

attempt at sentencing. But, as Government counsel conceded during oral argument, declaring a mistrial would have involved additional procedural steps and only the court-martial convening authority could have directed a rehearing once a mistrial had been declared. Oral Argument at 30:25–32:02, *United States v. Tate*, No. 21-0235 (C.A.A.F. Mar. 29, 2022).

In the absence of any briefing on this specific point, and in light of the potentially material differences between starting anew and declaring a post-findings mistrial pursuant to R.C.M. 915(a), we decline to decide whether starting anew—at least as it was invoked during the sentencing phase in this case—was authorized under R.C.M. 915(a), or more generally under the military judge's inherent power to control court-martial proceedings. *See* R.C.M. 801(a)(3) (requiring military judges to "exercise reasonable control over the proceedings to promote the purposes of these rules"); R.C.M. 102 (stating that the purpose of the rules is to "provide for the just determination of every proceeding relating to trial by court-martial"). Instead, we assume—without deciding—that the judicially crafted remedy of starting anew was a permissible option to cure the lost recording in this case, and proceed to the second part of our analysis.[4]

With respect to the specific actions taken by the military judge in this case, we conclude that even if the military judge *could* have lawfully started the sentencing proceedings anew, he did not *actually* do so. The military judge announced that he was starting anew and that the new proceedings would "wash out" the unrecorded proceedings. But before announcing Appellant's sentence, the military judge directly contradicted that announcement by explaining that he had modified the scope of evidence that he considered from the second session to match the testimony from the unrecorded session. Specifically, he stated that he "did not consider any

---

[4] We note that the President did not include starting anew among the four authorized corrective actions to cure incomplete or defective records of trial in the 2019 version of R.C.M. 1112(d)(3). Nevertheless, the Discussion to this rule still includes the following statement: "If either party objects to the summary or reconstruction, the trial should proceed anew, and the proceedings repeated from the point where the interruption began."

aggravation testimony by the government witnesses . . . . [t]hat such witnesses had not so testified when first called as a witness during which time their testimony had not been recorded." Record at 474–75.

The military judge's hybrid approach of purportedly starting anew but then expressly linking his understanding of the recorded testimony to the "washed out" unrecorded testimony resulted in an "amorphous mélange" that was neither a reconstruction nor a procedure that started "anew." *See United States v. Benoit*, 43 C.M.R. 666, 667–68 (A.C.M.R. 1971). Without any recording of the lost original proceeding, there is no way to know (or for an appellate court to review) how much of the evidence from the second day the military judge disregarded or how material and relevant that evidence was to Appellant's adjudged sentence.

We recognize that the military judge assured counsel that "there would be no prejudice to the accused" caused by his disregarding some of the aggravating evidence presented by the Government during the recorded portion of the sentencing hearing. But we cannot affirm the sentence on the theory that the military judge's actions could only have helped Appellant. Under Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1) (Supp. IV 2013–2017), the ACCA has a duty to determine the appropriateness of the sentence. The ACCA could not perform this function without knowing exactly what aggravating evidence the military judge considered. And the ACCA could not have known exactly what the military judge considered and did not consider without being able to compare the recorded testimony to the unrecorded testimony.

The military judge proclaimed he was starting anew, but by his own words, relied upon the unrecorded testimony to determine Appellant's sentence. This flawed attempt to cure the substantial omission resulted in a transcript that was not verbatim. As a result, the military judge erred and the nonverbatim transcript was not properly remedied.

### C. Inability to Produce a Verbatim Transcript

If a military judge fails to cure the substantial omission and a nonverbatim transcript results, R.C.M. 1103(f) (2016 ed.) is triggered and the remedy lies within the sole discretion

of the convening authority. Rule for Courts-Martial 1103(f) (2016 ed.) states:

> If, because of loss of recording or notes, or other reasons, a verbatim transcript cannot be prepared when required by [1103(b)(2)(B)], a record which meets the requirements of (b)(2)(C) of this rule shall be prepared and the convening authority may:
>
> (1) Approve only so much of the sentence that could be adjudged by a special court-martial, except that a bad-conduct discharge, confinement for more than six months, or forfeiture of two-thirds pay per month for more than six months, may not be approved; or
>
> (2) Direct a rehearing as to any offense of which the accused was found guilty if the finding is supported by the summary of the evidence contained in the record, provided that the convening authority may not approve any sentence imposed at such a rehearing more severe than or in excess of that adjudged by the earlier court-martial.

Despite the discretionary language of R.C.M. 1103(f) (2016 ed.), Article 60(c)(4)(A), UCMJ, 10 U.S.C. § 860(c)(4)(A) (2012 & Supp. IV 2013–2017) presents a procedural limitation. Article 60(c)(4)(A), UCMJ, states, "the convening authority . . . may not disapprove, commute, or suspend in whole or in part an adjudged sentence of confinement for more than six months or a sentence of dismissal, dishonorable discharge, or bad conduct discharge." As a result, we set aside Appellant's sentence and remand to the Judge Advocate General of the Army for return to an appropriate convening authority for action consistent with R.C.M. 1103(f) (2016 ed.).

### III. Conclusion

The recording device failed to record the first day of Appellant's sentencing hearing, resulting in a nonverbatim transcript. Even if the military judge could have lawfully started the sentencing procedure anew, the military judge failed to properly do so because he relied upon the unrecorded lost testimony from the lost proceeding to limit the scope of the new testimony he considered in adjudging Appellant's sentence. The military judge's reliance upon the unrecorded testimony to frame his sentencing decision failed to remedy the nonverbatim transcript, creating a jurisdictional error

that cannot be cured. We thus hold that the transcript was not substantially verbatim.

The decision of the United States Army Court of Criminal Appeals is reversed. The findings are affirmed. The sentence is set aside. The record of trial is returned to the Judge Advocate General of the Army for return to an appropriate convening authority for action consistent with R.C.M. 1103(f) (2016 ed.).